OPINION OF THE COURT
 

 Smith, J.
 

 Plaintiff commenced this shareholder derivative action against International Business Machines Corporation (IBM) and IBM’s board of directors without first demanding that the board initiate a lawsuit. The amended complaint (complaint) alleges that the board wasted corporate assets by awarding excessive compensation to IBM’s executives and outside directors. The issues raised on this appeal are whether the Appellate Division abused its discretion by dismissing plaintiff’s complaint for failure to make a demand and whether plaintiff’s complaint fails to state a cause of action. We affirm the order of the Appellate Division because we conclude that plaintiff was not excused from making a demand with respect to the executive compensation claim and that plaintiff has failed to state a cause of action for corporate waste in connection with the allegations concerning payments to IBM’s outside directors.
 

 Facts and Procedural History
 

 The complaint alleges that during a period of declining profitability at IBM the director defendants engaged in self-dealing by awarding excessive compensation to the 15 outside directors on the 18-member board. Although the complaint identifies only one of the three inside directors as an IBM executive (defendant Akers is identified as a former chief executive officer of IBM),
 
 [1]
 
 plaintiff also appears to allege that the director defendants violated their fiduciary duties to IBM by voting for unreasonably high compensation for IBM executives.
 
 [2]
 

 Defendants moved to dismiss the complaint for (1) failure to state a cause of action, and (2) failure to serve a demand on IBM’s board to initiate a lawsuit based on the complaint’s al
 
 *193
 
 legations. The Supreme Court dismissed, holding that plaintiff failed to establish the futility of a demand. Supreme Court concluded that excusing a demand here would render Business Corporation Law § 626 (c) "virtually meaningless in any shareholders’ derivative action in which all members of a corporate board are named as defendants.” Having decided the demand issue in favor of defendants, the court did not reach the issue of whether plaintiffs complaint stated a cause of action.
 

 The Appellate Division affirmed the dismissal, concluding that the complaint did not contain any details from which the futility of a demand could be inferred. The Appellate Division found that plaintiffs objections to the level of compensation were not stated with sufficient particularity in light of statutory authority permitting directors to set their own compensation.
 

 Background
 

 A shareholder’s derivative action is an action "brought in the right of a domestic or foreign corporation to procure a judgment in its favor, by a holder of shares or of voting trust certificates of the corporation or of a beneficial interest in such shares or certificates” (Business Corporation Law § 626 [a]). "Derivative claims against corporate directors belong to the corporation itself’
 
 (Auerbach v Bennett,
 
 47 NY2d 619, 631).
 

 "The remedy sought is for wrong done to the corporation; the primary cause of action belongs to the corporation; recovery must enure to the benefit of the corporation. The stockholder brings the action, in behalf of others similarly situated, to vindicate the corporate rights and a judgment on the merits is a binding adjudication of these rights [citations omitted]”
 
 (Isaac v Marcus,
 
 258 NY 257, 264).
 

 Business Corporation Law § 626 (c) provides that in any shareholders’ derivative action, "the complaint shall set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reasons for not making such effort.” Enacted in 1961 (L 1961, ch 855), section 626 (c) codified a rule of equity developed in early shareholder derivative actions requiring plaintiffs to demand that the corporation initiate an action, unless such demand was futile, before commencing an action on the corporation’s behalf
 
 (Barr v Wack
 
 
 *194
 

 man,
 
 36 NY2d 371, 377).
 
 [3]
 
 The purposes of the demand requirement are to (1) relieve courts from deciding matters of internal corporate governance by providing corporate directors with opportunities to correct alleged abuses, (2) provide corporate boards with reasonable protection from harassment by litigation on matters clearly within the discretion of directors, and (3) discourage "strike suits” commenced by shareholders for personal gain rather than for the benefit of the corporation
 
 (Barr,
 
 36 NY2d, at 378). "[T]he demand is generally designed to weed out unnecessary or illegitimate shareholder derivative suits”
 
 (id.).
 

 By their very nature, shareholder derivative actions infringe upon the managerial discretion of corporate boards. "As with other questions of corporate policy and management, the decision whether and to what extent to explore and prosecute such [derivative] claims lies within the judgment and control of the corporation’s board of directors”
 
 (Auerbach,
 
 47 NY2d, at 631,
 
 supra).
 
 Consequently, we have historically been reluctant to permit shareholder derivative suits, noting that the power of courts to direct the management of a corporation’s affairs should be "exercised with restraint”
 
 (Gordon v Elliman,
 
 306 NY 456, 462).
 

 In permitting a shareholder derivative action to proceed because a demand on the corporation’s directors would be futile,
 

 "the object is for the court to chart the course for the corporation which the directors should have selected, and which it is presumed that they would have chosen if they had not been actuated by fraud or bad faith. Due to their misconduct, the court substitutes its judgment
 
 ad hoc
 
 for that of the directors in the conduct of its business”
 
 (id.,
 
 at 462).
 

 Achieving a balance between preserving the discretion of directors to manage a corporation without undue interference, through the demand requirement, and permitting shareholders to bring claims on behalf of the corporation when it is evident that directors will wrongfully refuse to bring such claims, through the demand futility exception, has been accomplished by various jurisdictions in different ways. One
 
 *195
 
 widely cited approach to demand futility which attempts to balance these competing concerns has been developed by Delaware courts and applies a two-pronged test to each case to determine whether a failure to serve a demand is justified. At the other end of the spectrum is a universal demand requirement which would abandon particularized determinations in favor of requiring a demand in every case before a shareholder derivative suit may be filed.
 

 The Delaware Approach
 

 Delaware’s demand requirement, codified in Delaware Chancery Court Rule 23.1, provides, in relevant part,
 

 "In a derivative action brought by 1 or more shareholders or members to enforce a right of a corporation * * * [the complaint shall allege] with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff’s failure to obtain the action or for not making the effort.”
 

 Interpreting Rule 23.1, the Delaware Supreme Court in
 
 Aronson v Lewis
 
 (473 A2d 805) developed a two-prong test for determining the futility of a demand. Plaintiffs must allege particularized facts which create a reasonable doubt that,
 

 "(1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. Hence, the Court of Chancery must make two inquiries, one into the independence and disinterestedness of the directors and the other into the substantive nature of the challenged transaction and the board’s approval thereof’ (473 A2d, at 814).
 

 The two branches of the
 
 Aronson
 
 test are disjunctive
 
 (see, Levine v Smith,
 
 591 A2d 194, 205). Once director interest has been established, the business judgment rule becomes inapplicable and the demand excused without further inquiry
 
 (Aronson,
 
 473 A2d, at 814). Similarly, a director whose independence is compromised by undue influence exerted by an interested party cannot properly exercise business judgment and the loss of independence also justifies the excusa! of a demand without further inquiry
 
 (see, Levine,
 
 591 A2d, at 205-206,
 
 supra).
 
 Whether a board has validly exercised its business judgment must be evaluated by determining whether the directors
 
 *196
 
 exercised procedural (informed decision) and substantive (terms of the transaction) due care
 
 (Grobow v Perot,
 
 539 A2d 180, 189).
 

 The reasonable doubt threshold of Delaware’s two-fold approach to demand futility has been criticized. The use of a standard of proof which is the heart of a jury’s determination in a criminal case has raised questions concerning its applicability in the corporate context
 
 (see, Starrels v First Natl. Bank,
 
 870 F2d 1168, 1175 [7th Cir] [Easterbrook, J., concurring]). The reasonable doubt standard has also been criticized as overly subjective, thereby permitting a wide variance in the application of Delaware law to similar facts (2 American Law Institute, Principles of Corporate Governance: Analysis and Recommendations § 7.03, Comment
 
 d,
 
 at 57 [1992]).
 

 Universal Demand
 

 A universal demand requirement would dispense with the necessity of making case-specific determinations and impose an easily applied bright line rule. The Business Law Section of the American Bar Association has proposed requiring a demand in all cases, without exception, and permits the commencement of a derivative proceeding within 90 days of the demand unless the demand is rejected earlier (Model Business Corporation Act § 7.42 [1] [1995 Supp]). However, plaintiffs may file suit before the expiration of 90 days, even if their demand has not been rejected, if the corporation would suffer irreparable injury as a result (Model Business Corporation Act § 7.42 [2]).
 

 The American Law Institute (ALI) has also proposed a "universal” demand. Section 7.03 of ALI’s Principles of Corporate Governance would require shareholder derivative action plaintiffs to serve a written demand on the corporation
 
 unless
 
 a demand is excused because "the plaintiff makes a specific showing that irreparable injury to the corporation would otherwise result” (2 ALI, Principles of Corporate Governance: Analysis and Recommendations § 7.03 [b], at 53-54 [1992]). Once a demand has been made and rejected, however, the ALI would subject the board’s decision to "an elaborate set of standards that calibrates the deference afforded the decision of the directors to the character of the claim being asserted”
 
 (Kamen v Kemper Fin. Servs.,
 
 500 US 90, 104).
 

 At least 11 States have adopted, by statute, the universal demand requirement proposed in the Model Business Corporation Act. Georgia, Michigan, Wisconsin, Montana, Virginia, New Hampshire, Mississippi, Connecticut, Nebraska and North
 
 *197
 
 Carolina require shareholders to wait 90 days after serving a demand before filing a derivative suit unless the demand is rejected before the expiration of the 90 days, or irreparable injury to the corporation would result
 
 (see,
 
 Ga Code Annot § 14-2-742 [enacted 1988]; Mich Comp Laws § 450.1493a [enacted 1989]; Wis Stat Annot § 180.0742 [enacted 1991]; Mont Code Annot § 35-1-543 [enacted 1991]; Va Code Annot § 13.1-672.1 [enacted 1992]; NH Rev Stat Annot § 293-A:7.42 [enacted 1992]; Miss Code Annot § 79-4-7.42 [enacted 1993]; Conn Gen Stat Annot § 33-722 [enacted 1994, eff Jan. 1, 1997]; Neb Rev Stat § 21-2072 [enacted 1995]; NC Gen Stat § 55-7-42 [enacted 1995]). Arizona additionally permits shareholders to file suit before the expiration of 90 days if the Statute of Limitations would expire during the 90-day period (Ariz Rev Stat Annot § 10-742 [enacted 1994]). Florida also appears to have adopted a universal demand requirement, although the statutory language does not track the Model Business Corporation Act. Florida’s statute provides, "A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made to obtain action by the board of directors
 
 and that the demand was refused or ignored”
 
 (Fla Stat Annot § 607.07401 [2] [emphasis added]).
 

 New York State has also considered and continues to consider implementing a universal demand requirement. However, even though bills to adopt a universal demand have been presented over three legislative sessions, the Legislature has yet to enact a universal demand requirement
 
 [4]
 

 (see, e.g.,
 
 NY Senate-Assembly Bill S 6395/A 8897 [1991/1992 legislative session] ["An act to amend the business corporation law, in relation to shareholder derivative suits”]; NY Senate Bill S 1018 ["An act to amend the business corporation law and the civil practice law and rules, in relation to shareholder derivative suits”] and NY Senate Bill S 6222 ["An act to amend the busi
 
 *198
 
 ness corporation law and the civil practice law and rules, in relation to shareholder derivative suits and providing for the repeal of certain provisions upon expiration thereof’] [1993/ 1994 legislative session]; NY Senate-Assembly Bill S 1117/A 1629 [1995/1996 legislative session] ["An act to amend the business corporation law and the civil practice law and rules, in relation to shareholder derivative suits and providing for the repeal of certain provisions upon expiration thereof’]).
 

 New York’s Approach to Demand Futility
 

 Although instructive, neither the universal demand requirement nor the Delaware approach to demand futility is adopted here. Since New York’s demand requirement is codified in Business Corporation Law § 626 (c), a universal demand may only be adopted by the Legislature. Delaware’s approach, which resembles New York law in some respects, incorporates a "reasonable doubt” standard which, as we have already pointed out, has provoked criticism as confusing and overly subjective. An analysis of the
 
 Barr
 
 decision compels the conclusion that in New York, a demand would be futile if a complaint alleges with particularity that (1) a majority of the directors are interested in the transaction, or (2) the directors failed to inform themselves to a degree reasonably necessary about the transaction, or (3) the directors failed to exercise their business judgment in approving the transaction.
 

 In
 
 Barr v Wackman
 
 (36 NY2d 371,
 
 supra),
 
 we considered whether the plaintiff was excused from making a demand where the board of Talcott National Corporation (Talcott), consisting of 13 outside directors, a director affiliated with a related company and four interested inside directors, rejected a merger proposal involving Gulf & Western Industries (Gulf & Western) in favor of another proposal on allegedly less favorable terms for Talcott and its shareholders. The merger proposal, memorialized in a board-approved "agreement in principle,” proposed exchanging one share of Talcott common stock for approximately $24 consisting of $17 in cash and 0.6 of a warrant to purchase Gulf & Western stock, worth approximately $7. This proposal was abandoned in favor of a cash tender offer for Talcott shares by Associates First Capital Corporation (a Gulf & Western subsidiary) at $20 per share — $4 less than proposed for the merger.
 

 The plaintiff in
 
 Barr
 
 alleged that Talcott’s board discarded the merger proposal after the four "controlling” inside directors received pecuniary and personal benefits from Gulf &
 
 *199
 
 Western in exchange for ceding control of Talcott on terms less favorable to Talcott’s shareholders. As alleged in the complaint, these benefits included new and favorable employment contracts for nine Talcott officers, including five-year employment contracts for three of the controlling directors. In addition to his annual salary of $125,000 with Talcott, defendant Silverman (a controlling director) would allegedly receive $60,000 a year under a five-year employment contract with Associates First Capital, and an aggregate of $275,000 for the next five years in an arrangement with Associates First Capital to serve as a consultant. This additional compensation would be awarded to Silverman after control of Talcott passed to Associates First Capital and Gulf & Western. Plaintiff also alleged that Gulf & Western and Associates First Capital paid an excessive "finder’s fee” of $340,000 to a company where Silverman’s son was an executive vice-president. In addition to alleging that the controlling defendants obtained personal benefits, the complaint also alleged that Talcott’s board agreed to sell a Talcott subsidiary at a net loss of $6,100,000 solely to accommodate Gulf & Western.
 

 In
 
 Barr,
 
 we held that insofar as the complaint attacked the controlling directors’ acts in causing the corporation to enter into a transaction for their own financial benefit, demand was excused because of the self-dealing, or self-interest of those directors in the challenged transaction. Specifically, we pointed to the allegation that the controlling directors "breached their fiduciary obligations to Talcott in return for personal benefits”
 
 (id.,
 
 at 376).
 

 We also held in
 
 Barr,
 
 however, that as to the disinterested outside directors, demand could be excused even in the absence of their receiving any financial benefit from the transaction. That was because the complaint alleged that, by approving the terms of the less advantageous offer, those directors were guilty of a "breach of their duties of due care and diligence to the corporation”
 
 (id.,
 
 at 380). Their performance of the duty of care would have "put them on notice of the claimed self-dealing of the affiliated directors”
 
 (id.).
 
 The complaint charged that the outside directors failed "to do more than passively rubber-stamp the decisions of the active managers”
 
 (id.,
 
 at 381) resulting in corporate detriment. These allegations, the
 
 Barr
 
 Court concluded, also excused demand as to the charges against the disinterested directors.
 

 Barr
 
 also makes clear that "[i]t is not sufficient * * * merely to name a majority of the directors as parties defendant with
 
 *200
 
 conclusory allegations of wrongdoing or control by wrongdoers” (i
 
 d.,
 
 at 379) to justify failure to make a demand. Thus,
 
 Barr
 
 reflects the statutory requirement that the complaint "shall set forth with particularity the * * * reasons for not making such effort” (Business Corporation Law § 626 [c]).
 

 Unfortunately, various courts have overlooked the explicit warning that conclusory allegations of wrongdoing against each member of the board are not sufficient to excuse demand and have misinterpreted
 
 Barr
 
 as excusing demand whenever a majority of the board members who approved the transaction are named as defendants
 
 (see, Miller v Schreyer,
 
 200 AD2d 492;
 
 Curreri v Verni,
 
 156 AD2d 420;
 
 MacKay v Pierce,
 
 86 AD2d 655;
 
 Joseph v Amrep Corp.,
 
 59 AD2d 841;
 
 see also, Allison Publs. v Mutual Benefit Life Ins. Co.,
 
 197 AD2d 463). As stated most recently, "[t]he rule is clear in this State that no demand is necessary if 'the complaint alleges acts for which a majority of the directors may be liable and plaintiff reasonably concluded that the board would not be responsive to a demand’ ”
 
 (Miller v Schreyer, supra,
 
 at 494 [quoting from
 
 Barr,
 
 36 NY2d, at 377,
 
 supra]’, but see, Lewis v Welch,
 
 126 AD2d 519, 521). The problem with such an approach is that it permits plaintiffs to frame their complaint in such a way as to automatically excuse demand, thereby allowing the exception to swallow the rule.
 

 We thus deem it necessary to offer the following elaboration of
 
 Barr’s
 
 demand/futility standard. (1) Demand is excused because of futility when a complaint alleges with particularity that a majority of the board of directors is interested in the challenged transaction. Director interest may either be self-interest in the transaction at issue
 
 (see, Barr v Wackman, supra,
 
 at 376 [receipt of "personal benefits”]), or a loss of independence because a director with no direct interest in a transaction is "controlled” by a self-interested director. (2) Demand is excused because of futility when a complaint alleges with particularity that the board of directors did not fully inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances
 
 (see, Barr, supra,
 
 at 380). The "long-standing rule” is that a director "does not exempt himself from liability by failing to do more than passively rubber-stamp the decisions of the active managers”
 
 (id.,
 
 at 381). (3) Demand is excused because of futility when a complaint alleges with particularity that the challenged transac
 
 *201
 
 tian was so egregious on its face that it could not have been the product of sound business judgment of the directors.
 
 [5]
 

 The Current Appeal
 

 Plaintiff argues that the demand requirement was excused both because the outside directors awarded themselves generous compensation packages and because of the acquiescence of the disinterested directors in the executive compensation schemes. The complaint states:
 

 "Plaintiff has made no demand upon the directors of IBM to institute this lawsuit because such demand would be futile. As set forth above, each of the directors authorized, approved, participated and/or acquiesced in the acts and transactions complained of herein and are liable therefor. Further, each of the Non-Employee [outside] Directors has received and retained the benefit of his excessive compensation and each of the other directors has received and retained the benefit of the incentive compensation described above. The defendants cannot be expected to vote to prosecute an action against themselves. Demand upon the company to bring action
 
 [sic]
 
 to redress the wrongs herein is therefore unnecessary.”
 

 Defendants argue that neither the Supreme Court nor the Appellate Division abused its discretion in holding that plaintiffs complaint did not set forth the futility of a demand with particularity.
 

 As in
 
 Barr,
 
 we look to the complaint here to determine whether the allegations are sufficient and establish with particularity that demand would have been futile. Here, the plaintiff alleges that the compensation awarded to IBM’s outside directors and certain IBM executives was excessive.
 

 Defendants’ motion to dismiss for failure to make a demand as to the allegations concerning the compensation paid to IBM’s executive officers was properly granted. A board is not interested "in voting compensation for one of its
 
 *202
 
 members as an executive or in some other nondirectorial capacity, such as a consultant to the corporation,” although "so-called 'back-scratching’ arrangements, pursuant to which all directors vote to approve each other’s compensation as officers or employees, do not constitute disinterested directors’ action” (1 ALI,
 
 op. cit,
 
 § 5.03, Comment
 
 g,
 
 at 250). Since only three directors are alleged to have received the benefit of the executive compensation scheme, plaintiff has failed to allege that a majority of the board was interested in setting executive compensation. Nor do the allegations that the board used faulty accounting procedures to calculate executive compensation levels move beyond "conclusory allegations of wrongdoing”
 
 (Barr v Wackman, supra,
 
 at 379) which are insufficient to excuse demand. The complaint does not allege particular facts in contending that the board failed to deliberate or exercise its business judgment in setting those levels. Consequently, the failure to make a demand regarding the fixing of executive compensation was fatal to that portion of the complaint challenging that transaction.
 

 However, a review of the complaint indicates that plaintiff also alleged that a majority of the board was self-interested in setting the compensation of outside directors because the outside directors comprised a majority of the board.
 

 Directors are self-interested in a challenged transaction where they will receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally
 
 (see, Rales v Blasband,
 
 634 A2d 927, 936 [Del Sup Ct];
 
 Bergstein v Texas Intl. Co.,
 
 453 A2d 467, 472-473 [Del Ch]; 1 ALI, Principles of Corporate Governance § 1.23, at 25; 13 [1995 rev vol] Fletcher, Cyclopedia of Private Corporations § 5965, at 138 [perm ed]). A director who votes for a raise in directors’ compensation is always "interested” because that person will receive a personal financial benefit from the transaction not shared in by stockholders
 
 (see, 1 ALI,
 
 Principles of Corporate Governance § 5.03, Comment
 
 g,
 
 at 250 ["if the board votes directorial compensation for itself, the board is interested”];
 
 see also, Steiner v Meyerson,
 
 [1995 Transfer Binder] Fed Sec L Rep [CCH] ¶ 98,857, at 93, 152 [Del Ch], 1995 WL 441999, 11 ["As the outside directors comprise a majority of the Telxon board and are personally interested in their compensation levels, demand upon them to challenge or decrease their own compensation is excused”]). Consequently, a demand was excused as to plaintiff’s allegations that the compensation set for outside directors was excessive.
 

 
 *203
 
 Corporate Waste
 

 Our conclusion that demand should have been excused as to the part of the complaint challenging the fixing of directors’ compensation does not end our inquiry. We must also determine whether plaintiff has stated a cause of action regarding director compensation, i.e., some wrong to the corporation. We conclude that plaintiff has not, and thus dismiss the complaint in its entirety.
 

 Historically, directors did not receive any compensation for their work as directors
 
 (see, 5A
 
 [1995 rev vol] Fletcher, Cyclopedia of Private Corporations § 2109 [perm ed]). Thus, a bare allegation that corporate directors voted themselves excessive compensation was sufficient to state a cause of action
 
 (e.g., Walsh v Van Ameringen-Haebler, Inc.,
 
 257 NY 478, 480;
 
 Jacobson v Brooklyn Lbr. Co.,
 
 184 NY 152, 162). Many jurisdictions, including New York, have since changed the common-law rule by statute providing that a corporation’s board of directors has the authority to fix director compensation unless the corporation’s charter or bylaws provides otherwise. Thus, the allegation that directors have voted themselves compensation is clearly no longer an allegation which gives rise to a cause of action, as the directors are statutorily entitled to set those levels. Nor does a conclusory allegation that the compensation directors have set for themselves is excessive give rise to a cause of action.
 

 "The courts will not undertake to review the fairness of official salaries, at the suit of a shareholder attacking them as excessive, unless wrongdoing and oppression or possible abuse of a fiduciary position are shown. However, the courts will take a hand in the matter at the instance of the corporation or of shareholders in extreme cases. A case of fraud is presented where directors increase their collective salaries so as to use up nearly the entire earnings of a company; where directors or officers appropriate the income so as to deprive shareholders of reasonable dividends, or perhaps so reduce the assets as to threaten the corporation with insolvency” (5A [1995 rev vol] Fletcher, Cyclopedia of Private Corporations § 2122, at 46-47 [perm ed]).
 

 Thus, a complaint challenging the excessiveness of director compensation must — to survive a dismissal motion — allege compensation rates excessive on their face or other facts which
 
 *204
 
 call into question whether the compensation was fair to the corporation when approved, the good faith of the directors setting those rates, or that the decision to set the compensation could not have been a product of valid business judgment.
 
 [6]
 

 Applying the foregoing principles to plaintiffs complaint, it is clear that it must be dismissed. The complaint alleges that the directors increased their compensation rates from a base of $20,000 plus $500 for each meeting attended to a retainer of $55,000 plus 100 shares of IBM stock over a five-year period. The complaint also alleges that ”[t]his compensation bears little relation to the part-time services rendered by the Non-Employee Directors or to the profitability of IBM. The board’s responsibilities have not increased, its performance, measured by the company’s earnings and stock price, has been poor yet its compensation has increased far in excess of the cost of living.”
 

 These conclusory allegations do not state a cause of action. There are no factually based allegations of wrongdoing or waste which would, if true, sustain a verdict in plaintiffs favor. Plaintiffs bare allegations that the compensation set lacked a relationship to duties performed or to the cost of living are insufficient as a matter of law to state a cause of action.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Levine and Ciparick concur; Judge Bellacosa taking no part.
 

 Order affirmed, with costs.
 

 [1]
 

 . The other inside directors, although identified as Employee Directors, are never explicitly identified as executive officers in the complaint. However, the names of these directors appear on a chart disclosing "payments to certain executives.”
 

 [2]
 

 . Executives at IBM are compensated through a fixed salary and performance incentives. Payouts on the performance incentives are based on IBM’s earnings per share, return on equity and cash flow. Plaintiff’s complaint criticizes only the performance incentive component of executive compensation as excessive because of certain accounting practices which plaintiff alleges artificially inflate earnings, return on equity and cash flow.
 

 [3]
 

 . Section 626 (c) was also partially based on former rule 23 (b) (now rule 23.1) of the Federal Rules of Civil Procedure (see, Legislative Studies and Reports, McKinney’s Cons Laws of NY, Book 6, Business Corporation Law § 626, at 351).
 

 [4]
 

 . The most recent bill (NY Senate-Assembly Bill S 1117/A 1629), which is currently pending in the 1995/1996 legislative session, proposes the following requirement:
 

 "(C) Demand. No shareholder may commence a derivative proceeding until:
 

 "(1) a written demand has been made on the corporation to take suitable action; and
 

 "(2) ninety days have expired from the date the demand was made, unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation or extinguishment of the claim would result by waiting for the expiration of the ninety day period.”
 

 [5]
 

 . "A director shall perforin his duties as a director * * * in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances” (Business Corporation Law § 717 [a];
 
 see also, Auerbach,
 
 47 NY2d, at 629 [observing that the business judgment doctrine "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes”]).
 

 [6]
 

 . There is general agreement that the allocation of the burden of proof differs depending on whether the compensation was approved by disinterested directors or shareholders, or by interested directors. Plaintiffs must prove wrongdoing or waste as to compensation arrangements regarding disinterested directors or shareholders, but directors who approve their own compensation bear the burden of proving that the transaction was fair to the corporation (see, Block, Barton and Radin, Business Judgment Rule, at 149 [4th ed]; 2 [1990 rev vol] Fletcher,
 
 op. cit.„
 
 § 514.1, at 632; 1 ALI,
 
 op. cit.,
 
 § 5.03). However, at the pleading stage we are not concerned with burdens of proof.