■ CHARLES MILLER et al., Appellants, v WILLIAM A. SCHREYER et al., Respondents, et al., Defendants. [683 NYS2d 51] —Judgment, Supreme Court, New York County (Carol Arber, J.), entered November 24, 1997, which dismissed plaintiff's consolidated amended complaint, unanimously reversed, on the law, without costs, and the prior order of Supreme Court denying defendants' motion to dismiss reinstated. Appeal from order, same court and Justice, entered May 6, 1997, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

This derivative action, brought on behalf of Merrill Lynch & Co., Inc., seeks damages allegedly sustained as the result of a $900 million "parking scheme". In a series of transactions, high quality United States Treasury securities held by the brokerage firm were exchanged for junk bonds held by Guaranty Security Life Ins. Co., a now-defunct Florida insurance company, for the purpose of falsifying the insurer's year-end balance sheet. The exchanges, which took place from 1984 through 1988, were made on or about December 31st and unwound (reversed) a few days later. The transactions served no legitimate purpose but were designed to artificially enhance the appearance of the insurer's capital position, thereby misleading Florida insurance regulators and staving off insolvency for several years. The complaint alleges that the failure of Merrill Lynch's board of directors to monitor operations and implement procedures to prevent such misconduct constitutes a breach of the directors' fiduciary duty. The complaint alleges that the corporation sustained damages by virtue of its exposure to criminal and civil liability.

This matter was last before the Court in 1994, at which time we affirmed the order of the same court and Justice, entered November 5, 1992, denying defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to serve a demand upon the board of directors, as required by the law of Delaware, the State of incorporation (200 AD2d 492). At that time, we indicated our agreement (*supra,* at 494) with Supreme Court's finding that "gross negligence was adequately pleaded in view of the magnitude and duration of the scheme which went undiscovered by the defendant directors" and therefore declined (*supra,* at 495) "to depart from the well established presumption that the alleged malfeasance of the majority of the board of directors, pleaded with particularity in the com-

plaint, renders service of a demand a futile gesture" (citing *Barr v Wackman*, 36 NY2d 371, 379). No appeal was taken from that determination.

The order presently subject to review determines precisely the same question addressed to Supreme Court in defendants' application of five years ago and is advanced in the identical procedural context of a motion to dismiss the complaint pursuant to CPLR 3211 (a) (7). This time, however, Supreme Court arrives at the opposite conclusion, deciding that plaintiffs were required to serve the corporation's board of directors before commencing this action. This second, inconsistent determination is predicated on the Court of Appeals' decision in *Marx v Akers* (88 NY2d 189, 200), which states that this Court "misinterpreted *Barr* as excusing demand whenever a majority of the board members who approved the transaction are named as defendants". The decision makes note of the explicit warning contained in *Barr* that "conclusory allegations of wrongdoing" do not suffice to excuse the prelitigation demand (*supra*, at 200).

On this appeal, defendants contend that, despite this Court's affirmation of the previous determination, dismissal of the complaint is now warranted by intervening case law. In urging reconsideration, defendants rely not only on the subsequent decision by the Court of Appeals in *Marx v Akers* (*supra*) but also upon the opinion of the Delaware Supreme Court in *Rales v Blasband* (634 A2d 927 [Del]), which was decided after the previous appeal had been argued to this Court. Because the wrongdoing asserted by plaintiffs on the part of defendant directors was negligence in failing to discover the wrongdoing of Merrill Lynch employees, rather than any affirmative decision to approve the action taken by corporate officers, Supreme Court originally held that, "under Delaware law, the business judgment rule does not shield the directors, and th[e] directors are not entitled to a pre-litigation demand if their own acts, as alleged in the complaint, constitute a breach of fiduciary duty" (200 AD2d, *supra*, at 494; *see, Aronson v Lewis*, 473 A2d 805, 812-813 [Del]). Citing this Court's decision in *Wilson v Tully* (243 AD2d 229), defendants argue that this Court has since recognized that the standard by which demand futility is assessed is no longer provided by *Aronson v Lewis* (*supra*). Rather, under *Rales v Blasband* (*supra*, at 936), a demand made to a member of the board of directors is only "futile" if that director is considered "interested" in the subject of the suit by virtue of his or her exposure to personal liability, specifically, when the individual director is confronted by

" 'substantial likelihood' " of liability and not just " 'a mere threat' ".

Plaintiffs, by contrast, point out that the opinion in *Wilson v Tully* (*supra*) states that it is factually distinguishable from the instant case. Likewise, the Delaware Court of Chancery in *In re Baxter Intl., Inc. Shareholders Litig.* (654 A2d 1268, 1271 [Del]) noted that while our prior affirmance "did not use the standard stated in *Rales*", it was "also factually distinguishable" from the matter before that court. It went on to state: "The court in *Schreyer* accepted the plaintiff's allegation that the magnitude of the transactions, the long duration of the practice, and the means by which the scheme was carried out were 'circumstances that should have come to the attention of senior managerial supervisors and arouse suspicion at the highest levels of the corporation' [quoting 200 AD2d, *supra*, at 493]. Thus, the court in effect concluded that there were obvious danger signs of employee wrongdoing." (*Supra*, at 1271.) By contrast, the Court of Chancery emphasized, the allegation of culpability in the matter before it was merely "conclusory" (*supra*, at 1271).

Under *Rales v Blasband* (*supra*, at 933), where the wrong alleged is the inaction of the board of directors rather than a conscious decision approving some action taken by the corporation, the business judgment rule is inapplicable. The standard by which futility is assessed involves deciding what board members would have done had they been presented with a demand to investigate the alleged wrongdoing at the time the complaint was filed (*supra*, at 935). In response to the demand, it is expected that the directors will determine the best method of informing themselves about the alleged misconduct and weigh available alternatives, including "internal corrective action and commencing legal proceedings" (*supra*, at 935). A director is considered disqualified from being able to make an independent decision in response to the demand if "interested" in its subject matter. The Court defines director interest as the receipt of a "personal financial benefit from a transaction that is not equally shared by the stockholders" (*supra*, at 936, citing *Aronson v Lewis*, 473 A2d, *supra*, at 812; *Pogostin v Rice*, 480 A2d 619, 624 [Del]). Alternatively, the Court states that "interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders" (*supra*, at 936).

Fundamentally at issue on this appeal is whether this Court should deviate from the doctrine of law of the case. Having sought and received a determination on a substantive question

of law in Supreme Court and on appeal to this Court, the issue to be decided is whether defendants are entitled to a second determination of the identical question, in contravention of the general rule that our decision precludes further consideration of the issue both by Supreme Court and by the Appellate Division (*Foley v Roche*, 86 AD2d 887, *lv denied* 56 NY2d 507). While the law of the case doctrine is not so inflexible as to preclude correction of a ruling based on a change in the law, "[t]he error sought to be corrected * * * must be so 'plain * * * [that it] would require [the] court to grant a reargument of a cause' " (*supra*, at 887, quoting *Eaton v Alger*, 47 NY 345, 348).

As an initial observation, there is no procedural basis for the resubmission of the issue at bar to Supreme Court. CPLR 3211 (e) permits only one motion to dismiss on the basis of CPLR 3211 (a) (7) for failure to state a cause of action (*McLearn v Cowen & Co.*, 60 NY2d 686, 689). While a motion to dismiss predicated on CPLR 3211 (a) (7) may be advanced at a later stage of the proceedings in the form of a motion for summary judgment under CPLR 3212 (*supra; Rich v Lefkovits*, 56 NY2d 276, 281-282), it is not available at this juncture. As stated in plaintiffs' reply brief, "this action has been stayed for the past five and one-half years awaiting the resolution of certain regulatory and private actions pending in Florida". The case has not materially progressed since defendants' last application for dismissal. No answer is contained in the record and, pursuant to CPLR 3212 (a), summary judgment is premature prior to joinder of issue (*City of Rochester v Chiarella*, 65 NY2d 92, 101; *Moscato v City of New York [Parks Dept.]*, 183 AD2d 599, 601; *Republic Natl. Bank v Luis Winston, Inc.*, 107 AD2d 581, 582). The present application therefore seeks reargument of the original motion culminating in our previous order deciding the appeal (*see, Manocherian v Lenox Hill Hosp.*, 229 AD2d 197, 202-203).

Defendants present no compelling reason for this Court to depart from the law of the case doctrine in what represents a largely factual determination, as opposed to a decision on a narrow point of law that clearly requires reversal in view of subsequent developments in case law (*cf., Vinciguerra v Jameson*, 208 AD2d 1136, *lv denied* 86 NY2d 702; *Szajna v Rand*, 131 AD2d 840; *Foley v Roche, supra*). To abandon our ruling would require this Court to speculate whether, on a review of our original decision, with the advantage of the full record before it, the Court of Appeals would agree that Delaware case law, as presently reflected by *Rales v Blasband* (634 A2d 927, *supra*), was improperly applied to the facts of this case.

It does not appear that the Delaware Supreme Court, in deciding *Rales*, intended to suggest that a board of directors is absolved of all responsibility to prevent the repeated misuse of corporate resources for illegal purposes. Indeed, as the Delaware Court of Chancery observed in *In re Baxter Intl., Inc. Shareholders Litig.* (654 A2d, *supra*, at 1270-1271), our decision in this case was based on "'obvious danger signs of employee wrongdoing.'" Furthermore, the Court of Appeals' decision in *Marx v Akers* (88 NY2d, *supra*, at 200) imposes accountability for wrongdoing about which corporate directors unreasonably fail to inform themselves, as appropriate to the circumstances. Significantly, the misconduct in this case concerns not one but a series of transactions, each involving hundreds of thousands of dollars, each executed on or about the last business day of the year, with the same client, in which the identical portfolios of Treasury securities and junk bonds were exchanged, only to be unwound within a few business days. In view of the illegal purpose of the transactions, their magnitude and duration, their timing, and the identity of their beneficiary, the matter should have come to the attention of senior management even on a rudimentary audit. It is hardly unreasonable to require directors to implement basic financial oversight procedures sufficient to disclose a patently improper scheme extending over a five-year period. Nor is it naive to consider it futile to expect the directors to launch a vigorous investigation well after the facts have come to light as the result of the insurer's insolvency. As disclosed by exhibits submitted in connection with the motion to lift the stay in this case, investigation of the parking scheme was undertaken by the duly empowered regulatory agencies, notably the Securities and Exchange Commission and the Florida Department of Insurance.

In sum, this Court concludes that its ruling on the futility of service of a prelitigation demand on the board of directors of Merrill Lynch is not so clearly wrong, in light of subsequent case law, as to require departure from the well-established doctrine of law of the case. Therefore, we adhere to our original order. Concur—Rubin, J. P., Tom, Andrias and Saxe, JJ.