Mason-Mahon v Flint (2018 NY Slip Op 07716)





Mason-Mahon v Flint


2018 NY Slip Op 07716


Decided on November 14, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 14, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
SHERI S. ROMAN
BETSY BARROS
ANGELA G. IANNACCI, JJ.


2015-12400
 (Index No. 602052/14)

[*1]Michael Mason-Mahon, etc., appellant, 
v
Douglas J. Flint, et al., defendants, HSBC Holdings, PLC, et al., nominal defendants-respondents.


Kirby McInerney LLP, New York, NY (David A. Bishop and Meghan J. Summers of counsel), and Rigrodsky & Long, P.A., Garden City, NY (Seth D. Rigrodsky and Timothy J. MacFall of counsel), for appellant (one brief filed).
Boies, Schiller & Flexner LLP, New York, NY (Nicholas A. Gravante, Jr., and Helen M. Maher of counsel), and Sullivan & Cromwell LLP, New York, NY (Richard C. Pepperman II and Alexander J. Willscher of counsel), for nominal defendants-respondents (one brief filed).



DECISION & ORDER
In an action, inter alia, to recover damages for breach of fiduciary duty, the plaintiff appeals from an order of the Supreme Court, Nassau County (Timothy S. Driscoll, J.), entered November 19, 2015. The order, insofar as appealed from, granted the nominal defendants' motion to dismiss the amended complaint.
ORDERED that the order is reversed insofar as appealed from, with costs, and the nominal defendants' motion to dismiss the amended complaint is denied.
The nominal defendant HSBC Holdings, PLC (hereinafter HSBC Holdings), is a company organized under the laws of the United Kingdom and headquartered in London, and is one of the world's largest international financial institutions. It directly or indirectly owns the remaining nominal defendants, HSBC Bank USA, N.A. (hereinafter HSBC Bank), HSBC North America
Holdings, Inc., and HSBC USA, Inc., all of which are either incorporated or headquartered in New York. The plaintiff is and was at all relevant times a shareholder in HSBC Holdings.
According to the complaint, in December 2012, HSBC Holdings and HSBC Bank reached agreements with banking regulators and New York and federal prosecutors in which they admitted to knowingly violating state and federal laws by failing to implement money laundering prevention safeguards and by circumventing sanctions imposed on Cuba, Iran, Libya, Sudan, and Burma (also known as Myanmar). The complaint alleges that the violations occurred despite repeated regulatory interventions and internal review findings that identified money laundering and sanctions evasions issues, and they occurred in part because of the manner in which HSBC Holdings managed the relationships among its many international subsidiaries. HSBC Holdings and HSBC Bank agreed to pay more than $1.5 billion in aggregate penalties and to implement significant internal structural and personnel changes as part of these settlements.
In May 2014, the plaintiff commenced this shareholder derivative action in the Supreme Court, Nassau County, on behalf of HSBC Holdings and the remaining nominal defendants against their current and former officers and directors, alleging breach of fiduciary duty and waste of corporate assets, among other things. The plaintiff filed an amended complaint in February 2015.
The nominal defendants thereafter moved pursuant to CPLR 327(a) and 3211(a) to dismiss the amended complaint. They argued that the internal affairs doctrine required the application of foreign law to questions of standing, and that the plaintiff lacked standing because he failed to seek permission from the English High Court pursuant to the United Kingdom Companies Act of 2006 (hereinafter UK Companies Act) prior to commencing this shareholder derivative action. In opposition, the plaintiff argued, among other things, that New York law governed the question of standing. Additionally, the nominal defendants argued that the amended complaint should be dismissed for lack of standing under New York law, and that dismissal was warranted based upon forum non conveniens.
In an order entered November 19, 2015, the Supreme Court applied the law of the United Kingdom pursuant to the internal affairs doctrine, and granted the nominal defendants' motion on the ground of lack of standing. The court rejected the alternate grounds asserted for dismissal by the nominal defendants, i.e., lack of standing under New York law and forum non conveniens. The plaintiff appeals.
After this appeal was perfected, the Court of Appeals decided Davis v Scottish Re Group Ltd. (30 NY3d 247), which held that a Cayman Islands court rule requiring plaintiffs in shareholder derivative actions to first apply to the Cayman Islands Grand Court for leave to continue the action is a procedural rule of the Cayman Islands, and "therefore does not apply where, as here, a plaintiff seeks to litigate his derivative claims in New York" (id. at 250). Thereafter, this Court allowed the litigants to submit additional papers on the issue of whether Davis had any impact on the determination of the issue of standing in this case. Based upon the analysis set forth in Davis, we find that the judicial-permission requirement set forth in the UK Companies Act is a procedural rule applicable only in England and Wales, or Northern Ireland. Therefore, we disagree with the Supreme Court's determination, and hold that the plaintiff was not required to obtain permission from the English High Court prior to commencing this derivative action in New York.
The internal affairs doctrine is a "conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs——matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders——because otherwise a corporation could be faced with conflicting demands" (Edgar v MITE Corp., 457 US 624, 645; see New Greenwich Litig. Trustee, LLC v Citgo Fund Servs. [Europe] B.V., 145 AD3d 16, 22; Graczykowski v Ramppen, 101 AD2d 978, 979; In re MF Global Holdings Ltd. Inv. Litig., 998 F Supp 2d 157, 179-180 [SD NY]). Based upon the internal affairs doctrine, the substantive law of the United Kingdom governs the merits of this action.
However, "under New York common-law principles, procedural rules are governed by the law of the forum" (Davis v Scottish Re Group Ltd., 30 NY3d at 252; see Tanges v Heidelberg N. Am., 93 NY2d 48, 53; Martin v Dierck Equip. Co., 43 NY2d 583, 588). "[T]he law of the forum normally determines for itself whether a given question is one of substance or procedure," and a "foreign jurisdiction's designation of the rule as procedural or substantive, while instructive, is not dispositive" (Davis v Scottish Re Group Ltd., 30 NY3d at 253).
In determining whether the subject judicial-permission rule is procedural or substantive, we must first look at its plain language (see id.). Here, Part II, Chapter 1, section 260(1), of the UK Companies Act, entitled "Derivative Claims in England and Wales or Northern Ireland," provides, in pertinent part, that "[t]his Chapter applies to proceedings in England and Wales or Northern Ireland by a member of a company—(a) in respect of a cause of action vested in the company, and (b) seeking relief on behalf of the company," and shall be referred to as a " derivative claim.'" UK Companies Act § 261(1) provides that "[a] member of a company who brings a derivative claim under this Chapter must apply to the court for permission (in Northern Ireland, [*2]leave) to continue it." Thus, by its own terms, UK Companies Act § 261(1) applies only to derivative claims brought in England and Wales, or Northern Ireland, and does not suggest that it applies in any other jurisdiction such as New York (see Davis v Scottish Re Group Ltd., 30 NY3d at 253). Moreover, the plain meaning of the rule is that it applies to any derivative action commenced in England and Wales, or Northern Ireland, in respect of a cause of action vested in the "company" and seeking relief on behalf of the "company" irrespective of where such company is incorporated. Thus, as in Davis, the rule appears to "serve a gatekeeping function," but only as to derivative actions commenced in England and Wales, or Northern Ireland, not for derivative actions, wherever commenced, concerning companies incorporated in England and Wales, or Northern Ireland, specifically (see Davis v Scottish Re Group, Ltd., 30 NY3d at 254).
Additionally, the UK Companies Act has no provision suggesting that it applies to derivative actions on behalf of companies incorporated in England, Wales, or Northern Ireland commenced which are outside of England, Wales, or Northern Ireland (see id.).
Contrary to the defendants' contentions, the UK Companies Act is not analogous to the judicial-permission requirements in the British Virgin Islands' (BVI) Business Companies Act (2004) § 184C and the Canada Business Corporations Act (RSC 1985, c C-44, s 239), which the Court of Appeals in Davis described as substantive. Unlike the UK Companies Act, the British Virgin Islands' (BVI) Business Companies Act (2004) § 184C "requires that any shareholder intending to commence a derivative action on behalf of a BVI-incorporated company, first obtain leave from a BVI court" (Davis v Scottish Re Group Ltd., 30 NY3d at 254 [emphasis added]). "Likewise, the Canada Business Corporations Act (RSC 1985, c C-44, s 239), requires any shareholder seeking to commence a derivative action on behalf of a Canadian corporation to obtain leave from a Canadian court, and upon being granted leave, the action must be commenced solely in certain enumerated Canadian courts" (Davis v Scottish Re Group Ltd., 30 NY3d at 254-255 [emphasis added]). Here, the UK Companies Act does not have a similar provision, inter alia, limiting its application to only United Kingdom companies and, therefore, lacks extra-jurisdictional authority (see id. at 255).
Accordingly, since the procedural law of the forum typically applies under our conflict-of-law rules, the plaintiff's failure to first comply with the judicial-permission requirement contained in UK Companies Act § 260(1) does not bar his derivative claims in New York (see Davis v Scottish Re Group Ltd., 30 NY3d at 257).
As an alternative ground for affirmance (see Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 544-545), the nominal defendants contend that the plaintiff lacks standing under New York law pursuant to Business Corporation Law § 626(c) because the amended complaint fails to allege that the plaintiff made efforts to secure initiation of the action by the board itself or set forth the reasons for not making such effort (see Walsh v Wwebnet, Inc., 116 AD3d 845, 846). Here, because the plaintiff concedes that he made no demand upon the board, he was required to plead facts demonstrating that a demand would have been futile (id. at 846).
"Demand is futile, and excused, when the directors are incapable of making an impartial decision as to whether to bring suit" (Bansbach v Zinn, 1 NY3d 1, 9; see Walsh v Wwebnet, Inc., 116 AD3d at 846; Malkinzon v Kordonsky, 56 AD3d 734, 735). The plaintiff may satisfy this standard by alleging with particularity (1) that a majority of the board of directors is interested in the challenged transaction; or (2) that the board of directors did not fully inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances; or (3) that the challenged transaction was so egregious on its face that it could not have been the product of sound business judgment of the directors (see Marx v Akers, 88 NY2d 189, 200-201). Here, the plaintiff relied upon the second ground on which demand futility may be established under Marx v Akers (see id. at 200).
Contrary to the nominal defendants' contention, the amended complaint alleges with particularity that the board of directors did not fully inform itself about the challenged transactions to the extent reasonably appropriate under the circumstances (see id. at 200-201). In this regard, the [*3]plaintiff makes specific allegations to the effect that HSBC Holdings had a company policy requiring that its board of directors be notified regarding any litigation and compliance issues resulting in fines or penalties of more than $1,500; and that based upon such regular reporting, the board had specific information or reason to inform itself regarding HSBC Bank's payments of alleged penalties in excess of that amount. Moreover, the amended complaint alleges facts pertaining to various illegal transactions that occurred over a 13-year period that involved a failure to monitor more than $670 billion in wire transfers and more than $9.4 billion in purchases; that involved the processing of $660 million in transactions that were prohibited by the United States Department of Treasury's Office of Foreign Assets Control and caused at least $881 million in drug trafficking proceeds to be laundered through HSBC Bank; and that resulted in the defendants' payment in excess of $1.5 billion in fines and penalties to New York state and federal authorities. In view of the illegal purpose, magnitude, and duration of the alleged wrongdoing, as well as the identity of beneficiaries to the transactions, the allegations were such that the transactions should have come to the attention of senior management and the board of directors (see Matter of Comverse Tech, Inc. Derivative Litig., 56 AD3d 49, 55; Miller v Schreyer, 257 AD2d 358, 362). "The long-standing rule' is that a director does not exempt himself from liability by failing to do more than passively rubber-stamp the decisions of the active managers'" (Marx v Akers, 88 NY2d at 200, quoting Barr v Wackman, 36 NY2d 371, 381). Therefore, the amended complaint was sufficient to establish the second test for demand futility. Accordingly, we agree with the Supreme Court's determination that the nominal defendants were not entitled to dismissal on the ground that the plaintiff lacked standing under New York law.
As another alternative ground for affirmance, the nominal defendants contend that the amended complaint should be dismissed on the ground of forum non conveniens (see CPLR 327). "The doctrine of forum non conveniens permits a court to stay or dismiss an action when, although it may have jurisdiction over the action, the court determines that in the interest of substantial justice the action should be heard in another forum'" (Koop v Guskind, 116 AD3d 672, 673, quoting CPLR 327[a]). "On a motion to dismiss the complaint on the ground of forum non conveniens, the defendant bears the burden of demonstrating relevant private or public interest factors which militate against accepting the litigation'" (Koop v Guskind, 116 AD3d at 673, quoting Islamic Republic of Iran v Pahlavi, 62 NY2d 474, 479). In making its determination, the court must weigh, inter alia, "the parties' residences, the location of the witnesses and any hardship caused by the choice of forum, the availability of an alternative forum, the situs of the action, and the burden on the New York court system" (Koop v Guskind, 116 AD3d at 674). Here, given that the allegations of wrongdoing occurred in New York, that only 21 of the 75 individual defendants live and work outside of New York, and that 3 of the nominal defendants are either incorporated or headquartered in New York, the Supreme Court providently exercised its discretion in determining that the nominal defendants were not entitled to dismissal on the ground of forum non conveniens.
The parties' remaining contentions have been rendered academic in light of our determination.
MASTRO, J.P., ROMAN, BARROS and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court