■ In the Matter of OMNICOM GROUP INC. SHAREHOLDER DERIVATIVE LITIGATION. GARY OTTERBACH et al., Respondents, v BRUCE CRAWFORD et al., Appellants, and OMNICOM GROUP INC., Appellant. [842 NYS2d 408]—

Order, Supreme Court, New York County (Karla Moskowitz, J.), entered June 27, 2006, which denied defendants' motion to dismiss the complaint, unanimously reversed, on the law, with costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint as against them.

In this shareholder derivative action, plaintiffs, shareholders of Omnicom Group Inc. (Omnicom), allege that, in May 2001, Omnicom's directors breached their fiduciary duty of good faith by knowingly approving the formation and use of a subsidiary, Seneca Investments, LLC (Seneca), to conceal the true financial condition of Omnicom's Internet investments. Plaintiffs further

allege that the chairman and two directors of the Omnicom board breached their fiduciary duty of good faith by selling shares based on material nonpublic information.

The undisputed facts of this case are that Omnicom invested in Internet firms through its Communicade division. When the Internet bubble burst, the value of those investments plummeted. In May 2001, defendants (Omnicom and its directors) transferred those investments to Seneca, a partnership between Omnicom and Pegasus II, L.P. (Pegasus).

Plaintiffs allege that the transfer was a sham. They point to the fact that Seneca was managed by the same individuals who had managed Communicade, out of the same offices in Omnicom's corporate headquarters. Further they allege that there was no basis for valuing the transferred assets at $280 million and that Omnicom's transfer of its Communicade investments to Seneca lacked any legitimate purpose.

However, a Wall Street Journal article quoted in the complaint states, "Mr. Wren [Omnicom's president and CEO] says the valuation of the Seneca assets came from a financial-valuation firm, Murray, Devine & Co. in Philadelphia."

The Wall Street Journal article also stated:

"Mr. Wren says he realized Omnicom didn't have the expertise to turn around the floundering Internet firms. He says the company sought out Pegasus Capital LLP, a[n] . . . investment firm founded and headed by . . . a former lawyer for the junk-bond department of . . . Drexel Burnham Lambert Inc. Pegasus . . . specializes in reorganizing distressed companies and brands . . .

"Mr. Wren says, 'Seneca was smart because instead of just walking away from these [Internet investments] and taking a write-off, we said we believe that Pegasus, through Seneca, could restructure the assets and make them valuable again.' "

Between August 1, 2001 and May 20, 2002, defendants Bruce Crawford (chairman of Omnicom's board), Keith L. Reinhard (chairman and CEO of Omnicom subsidiary DDB and a director of Omnicom), and Allen G. Rosenshine (chairman and CEO of Omnicom subsidiary BBDO and a director of Omnicom,) sold 298,100 shares of Omnicom stock at an average price of $85.79.

On June 10, 2002, the Wall Street Journal reported that a longstanding director of Omnicom had quit the board after expressing concerns about the creation of an entity that houses Omnicom's Internet assets. The Wall Street Journal published another article about Omnicom on June 12, 2002. Subsequently, the price of Omnicom common stock fell nearly 30%, from $77.56 to $54.62.

Plaintiffs then brought this derivative action. Defendants moved to dismiss pursuant to Business Corporation Law § 626 (c) because plaintiffs had failed to (a) make a demand on the board before bringing this derivative lawsuit and (b) show that making such a demand would be futile.

The motion court denied defendants' motion to dismiss even though it found that plaintiffs had failed to show either that a majority of the directors was interested in the Seneca transaction, or that it had failed to inform itself to a degree reasonably necessary about the transaction. The court held, however, that the allegations of the complaint showed that the sole purpose of the transaction was to conceal the true status of the failing Internet companies. Based upon this showing, the court concluded plaintiffs had rebutted the presumption of the business judgment rule. For the reasons set forth below, we find that the motion court erred.

In *Marx v Akers* (88 NY2d 189 [1996]) the Court of Appeals set forth three situations in which a plaintiff in a shareholder derivative action need not make a presuit demand on the board: "(1) Demand is excused because of futility when a complaint alleges with particularity that a majority of the board of directors is interested in the challenged transaction. . . . (2) Demand is excused because of futility when a complaint alleges with particularity that the board of directors did not fully inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances . . . (3) Demand is excused because of futility when a complaint alleges with particularity that the challenged transaction was so egregious on its face that it could not have been the product of sound business judgment of the directors" (*id.* at 200-201).

The Court of Appeals emphasized that presuit demand is the rule, that excusing demand is the exception, and that the exception should not be permitted to swallow the rule (*id.* at 200). On appeal, the sole issue to be determined is whether "the challenged transaction was so egregious on its face that it could not have been the product of sound business judgment of the directors" (*id.* at 200-201).

Defendants contend that if one looks at the complaint as a whole, it does not "allege[ ] with particularity that the challenged transaction was so egregious on its face that it could not have been the product of sound business judgment of the directors." This Court agrees. Further, if plaintiffs' allegations were to be taken as true despite contradictory statements in an article they have incorporated in their complaint, the exception would swallow the rule.

The Wall Street Journal article adopted by plaintiffs in their complaint shows that, at the time Omnicom entered into the transaction, its directors could have been making a business judgment that Pegasus would use its expertise to turn the failing Internet companies around. Therefore, the defendants correctly contend the facts, as pleaded in the complaint, do not rule out all possibility that the transaction was the product of sound business judgment. Concur—Friedman, J.P., Marlow, Sweeny, Catterson and Malone, JJ.