[871 NYS2d 102]

Arnold Wandel, Derivatively on Behalf of Bed Bath & Beyond, Inc., Appellant, v Warren Eisenberg et al., Respondents, and Bed Bath & Beyond, Inc., Nominal Defendant-Respondent.

First Department, January 13, 2009

## APPEARANCES OF COUNSEL

*Federman & Sherwood*, Oklahoma City, Oklahoma (*William B. Federman* of counsel); *Pomerantz Haudek Block Grossman & Gross, LLP*, New York City (*H. Adam Prussing* and *Jeremy A. Lieberman* of counsel), and *Law Offices of Marc S. Henzel*, Lawrence (*Marc S. Henzel* of counsel), for appellant.

*Proskauer Rose LLP*, New York City (*David M. Lederkramer, Karen E. Clarke* and *John H. Snyder* of counsel), for respondents.

## OPINION OF THE COURT

Saxe, J.P.

Following this Court's recent reinstatement of a shareholder derivative action based upon claims that a majority of the board of directors knew or had enough specific information that they should have known of the company's practice of backdating stock options (*see Matter of Comverse Tech., Inc. Derivative Litig.*, 56 AD3d 49 [2008]), we must now further consider the amount of knowledge and information necessary to establish demand futility.

In the wake of a wave of publicity disclosing that numbers of public companies had been backdating stock option grants, in June of 2006 two securities analysts, Merrill Lynch and Deutsche Bank, issued reports identifying nominal defendant Bed Bath & Beyond as a company whose stock option grant dates aroused suspicion of backdating. On June 19, 2006, the board of directors of Bed Bath & Beyond appointed a special committee of two independent directors to conduct an investigation.

On September 20, 2006, counsel for the special committee notified the Securities and Exchange Commission (SEC) of its review, and the SEC commenced its own informal inquiry. On October 10, 2006, Bed Bath & Beyond made public the findings of its special committee, which had "identified various deficiencies in the process of granting and documenting stock options."

The report acknowledged that "[s]ome hindsight was used in selecting some annual grant dates." Specifically, "[e]xcluding grants only to Form 4 filers beginning in 2003, almost all annual grant dates in 1998-2004 likely were selected with some hindsight," although this "hindsight" was relatively slight, in that grant dates were selected within a few trading days after the recorded date, and the individuals who selected the dates did not "appreciate the accounting or disclosure implications of the practices used for selecting those dates." Similarly, the special committee found that the people responsible for accounting and disclosure functions at the company were unaware of any of the improper date selection practices. It concluded that no person involved in the grant process had engaged in willful misconduct and, in particular, that the cochairmen and chief executive officer believed that they were acting in the best interests of the company with the purpose of attracting and retaining employees.

Following the issuance of the report, the company adopted new controls in its stock option awards process. It also performed a financial analysis of the effect of adjusting for the option misdating. It determined that the adjustment of compensation charges for those years would have no material effect on its past financial statements, but that adjustment of the equity section of its consolidated balance sheet would be necessary. In addition, it reset the prices of unvested options to the appropriate levels.

Approximately nine days after Bed Bath & Beyond made public the special committee's findings, plaintiff brought the instant derivative action. Defendants moved to dismiss the complaint (as amended) for failure to adequately plead demand futility, and the motion was granted (2007 NY Slip Op 31270[U]). This appeal followed.

Business Corporation Law § 626 (c) requires that a shareholder bringing a derivative action seeking to vindicate the rights of the corporation allege, with particularity, either that an attempt was first made to get the board of directors to initiate such an action or that any such effort would be futile.

> "The demand requirement rests on basic principles of corporate control—that the management of the corporation is entrusted to its board of directors, who have primary responsibility for acting in the name of the corporation and who are often in a po-

sition to correct alleged abuses without resort to the courts" (*Bansbach v Zinn*, 1 NY3d 1, 8-9 [2003] [internal quotation marks and citation omitted]).

Therefore, the demand requirement is excused only when the complaint's specific allegations support the conclusion that "(1) a majority of the directors are interested in the transaction, or (2) the directors failed to inform themselves to a degree reasonably necessary about the transaction, or (3) the directors failed to exercise their business judgment in approving the transaction" (*Marx v Akers*, 88 NY2d 189, 198 [1996]).

The pertinent question here is whether the complaint alleges with the requisite particularity any of the grounds for excusing demand on the board of directors as futile. As to the first test for demand futility under *Marx v Akers*, the complaint fails to support the assertion that a majority of the directors should be treated as interested in the transaction. It is conceded that of the 10 individuals on the board of directors during the relevant period, three inside directors are alleged to have received backdated options and must therefore be treated as interested. However, the allegations as to the actions of the other directors are insufficient to establish that any of them were interested. There is nothing from which to infer that any of the other directors were controlled by the inside directors. The bare claim that the directors who served on the stock option and compensation committees should be viewed as interested because they are "substantially likely to be held liable" for their actions is not enough. The assertion that directors are interested because they are "substantially likely to be held liable" applies a standard employed in Delaware (*see e.g. Stone ex rel. AmSouth Bancorporation v Ritter*, 911 A2d 362, 370 [Del 2006]); however, New York's Court of Appeals has declined to adopt "the Delaware approach to demand futility" (*Marx*, 88 NY2d at 198). Indeed, if we were to find demand futility wherever it was asserted that a majority of directors were "substantially likely to be held liable," then "all well-pled complaints would be able to establish demand futility. If facts outside of the pleadings may be considered in determining 'likelihood of liability,' a trial on the merits would be needed to determine whether to apply the futility exception" (*see In re InfoSonics Corp. Derivative Litig.*, 2007 WL 2572276, *7, 2007 US Dist LEXIS 66043, *20 [SD Cal, Sept. 4, 2007]). Nor is the assertion that these directors "completely disregarded or abdicated their re-

sponsibilities to manage the stock option plan" sufficient to fill the void.

The second ground on which demand futility may be established under *Marx v Akers* (88 NY2d at 198) is that "the directors failed to inform themselves to a degree reasonably necessary about the transaction." In this Court's recent decision in *Matter of Comverse Tech., Inc. Derivative Litig.* (56 AD3d 49 [2008], *supra*), we reinstated a shareholder derivative complaint involving the issuance of backdated stock options, concluding that the allegations established demand futility under the second test of *Marx v Akers*. In holding that the board and its compensation committee had failed to exercise reasonably appropriate oversight of the stock option granting process, we relied upon such specific assertions as (1) "unanimous written consents" for grants of stock options were sometimes presented to the compensation committee for signature more than a month after the grant date in circumstances where the stock price had risen dramatically in the intervening period, and yet were approved without question or inquiry; (2) compensation committee members orally approved option grants in direct violation of the company's bylaws; and (3) the compensation committee had a list of individuals who received option grants in 2001 that contained more than two dozen names of individuals who were not Comverse employees, which names were used for options placed in a "slush fund" for later use, yet not even a cursory check or inquiry was made by the compensation committee (*id.* at 55).

Here, in contrast, the amended complaint fails to plead with the requisite particularity that the directors had specific information or reason to inform themselves about the details of the issuance of stock options, and failed to do so.

The third test of *Marx* authorizes a finding of demand futility "when [the] complaint alleges with particularity that the challenged transaction was so egregious on its face that it could not have been the product of sound business judgment of the directors" (88 NY2d at 200-201). In this respect, too, the complaint now before us is distinguishable from that which we considered in *Matter of Comverse Tech., Inc. Derivative Litig.* (*supra*), where the factual allegations drew a picture of a backdating process so open and egregious as to preclude the possibility that issuance and approval of those options could constitute an appropriate exercise of business judgment on the part of the board of directors.

In *Comverse*, we adopted the Delaware Chancery Court's observation that "[b]ackdating options qualifies as one of those 'rare cases [in which] a transaction may be so egregious on its face that board approval cannot meet the test of business judgment' " (*Ryan v Gifford*, 918 A2d 341, 355-356 [Del Ch 2007], quoting *Aronson v Lewis*, 473 A2d 805, 815 [Del 1984]). While we do not dispute the continued validity of that assertion, it may not be relied upon to eliminate the particularity requirement. The allegations here, based on a report acknowledging backdating but indicating that the misdating was generally by a matter of mere days, do not rise to the level required by the *Marx* test.

Indeed, after the *Ryan v Gifford* (*supra*) decision, the Delaware Court of Chancery was faced with a complaint charging the backdating of options but lacking sufficient specificity (*see Desimone v Barrows*, 924 A2d 908 [Del Ch 2007]). As in the matter before us, the plaintiff in *Desimone* did not specifically allege that the members of the board who served on the compensation committee knowingly approved improperly backdated options while possessed of specific reason to question the date selection process; the court declined to find demand futility based on the fact of backdating without more (*see id.* at 915).

The complaint here lacks the particularity required to support a finding of demand futility. Unlike the complaint in *Comverse*, it fails to allege with sufficient specificity a purposeful and egregious backdating scheme where the directors had significant reason to question or investigate the process of stock option issuance and failed to do so. Moreover, unlike the company in *Comverse*, which failed to take action to correct the damage to it even after the scheme came to light, Bed Bath & Beyond remedied the error by resetting the price of unvested options, and adopted a number of other recommended new controls.

Plaintiff makes no arguments on appeal as to why he should be allowed to serve and file a second amended complaint, and we therefore deem that request abandoned. Were we to consider that claim, we would find that the motion court did not improvidently exercise its discretion in failing to grant the plaintiff's request to replead.

Accordingly, the order of the Supreme Court, New York County (Charles Edward Ramos, J.), entered May 18, 2007, which granted defendants' motion to dismiss the amended complaint, should be affirmed, without costs.

NARDELLI, MOSKOWITZ, ACOSTA and DEGRASSE, JJ., concur.

Order, Supreme Court, New York County, entered May 18, 2007, affirmed, without costs.