18-107
*Jiminian et al. v. Seabrook et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of January, two thousand nineteen.

Present:
>    AMALYA L. KEARSE,
>    DEBRA ANN LIVINGSTON,
>    SUSAN L. CARNEY,
>         *Circuit Judges*.

---

HERMAN JIMINIAN, JEANETTE FELICIANO, ALBIN DULCET, ELIZABETH ROMAIN, MARIA MOREIRA,

>    *Plaintiffs-Appellants*,

>    v.                                                          18-107

NORMAN SEABROOK, ELIAS HUSAMUDEEN, JOSEPH BRACCO, ELIZABETH CASTRO, MICHAEL MAIELLO, AMELIA WARNER, THOMAS FARRELL, KAREN TYSON, BENNY BOSCIO, KENYATTA JOHNSON, ALBERT CRAIG, DANIEL PALMEIRI, ANGEL CASTRO, FREDERIC FUSCO, PAULETTE BERNARD, MURRAY HUBERFELD, JONA RECHNITZ, KOEHLER & ISAACS, LLP, THE CORRECTIONS OFFICERS BENEVOLENT ASSOCIATION ANNUITY FUND, THE CORRECTIONS OFFICERS BENEVOLENT ASSOCIATION GENERAL FUND, CORRECTION OFFICER'S BENEVOLENT ASSOCIATION, INC.,

>    *Defendants-Appellees*.

1

PLATINUM MANAGEMENT NEW YORK LLC, DAVID BODNER,
JEREMY REICHBERG, BUCHBINDER TUNICK & COMPANY LLP,
DANIEL H. COOK AND ASSOCIATES INC.,
STERLING VALUATION GROUP INC., MARK NORDLICHT,

*Defendants.*[*]

For Plaintiffs-Appellants:　　　　　JEFFREY M. NORTON, Newman Ferrara LLP, PHILIP H. SEELIG, Seelig Law Offices, LLC, New York, NY.


For Defendant-Appellee
Norman Seabrook:　　　　　Nathaniel Z. Marmur, Law Offices of Nathaniel Z. Marmur, PLLC, New York, NY.


For Defendants-Appellees
Elias Husamudeen, Joseph Bracco,
Elizabeth Castro, Michael Maiello,
Amelia Warner, Thomas Farrell,
Karen Tyson, Benny Boscio,
Kenayatta Johnson, Albert Craig,
Daniel Palmeiri, Angel Castro,
Frederic Fusco, Paulette Bernard,
Murray Huberfeld:　　　　　NATHANIEL K. CHARNY, Charny & Wheeler, Attorneys at Law, Rhinebeck, NY.


For Defendant-Appellee
Jonah Rechnitz:　　　　　Eric M. Creizman, Pierce Bainbridge Beck Price & Hecht LLP, New York, NY.


For Defendant-Appellee
Koehler & Isaacs:　　　　　REED M. BRODSKY (Jonathan N. Soleimani, *on the brief*), Gibson, Dunn & Crutcher LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Oetken, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

---

[*]The Clerk of Court is respectfully instructed to amend the caption as set forth above.

2

Plaintiffs-Appellants Herman Jiminian, Elizabeth Romain, Jeanette Feliciano, Albin Duclet, and Maria Moreira (together the "COBA Appellants") appeal from the December 15, 2017 decision and order of the United States District Court for the Southern District of New York (Oetken, J.) granting Defendants-Appellees' motions to dismiss for failure to state a claim. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

This appeal centers on the pleading requirements associated with shareholder derivative litigation. Members of the Corrections Officers Benevolent Association, Inc. ("COBA") commenced this derivative suit on behalf of COBA's Annuity Fund (employee retirement benefits) and General Fund (operating account) against, *inter alia*, COBA's Executive Board, its former President Norman Seabrook, and its legal counsel Koehler & Isaacs LLP. The case arose after Seabrook was charged with honest services fraud in connection with a kickback scheme involving investment of COBA funds. He was later convicted of that offense. The COBA Appellants allege that COBA invested approximately $20 million dollars in Platinum Partners Value Arbitrage Fund ("PPVA")—a hedge fund now revealed to be a Ponzi scheme—at the behest of Seabrook, who was being paid large sums of cash by a PPVA executive to direct COBA funds to PPVA. The COBA investments in PPVA are now alleged to be "worthless." App'x 46.

"We review the grant of a motion to dismiss under Rule 12(b)(6) *de novo*, construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (internal quotation marks omitted). To withstand a Rule 12(b)(6) motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that "are no more than conclusions . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79.

Additionally, under Federal Rule 23.1, a shareholder or member's complaint bringing a *derivative* action must "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors or comparable authority" and "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). Rule 23.1 is a pleading rule that "creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question." *RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1330 (2d Cir. 1991). "Because Rule 23.1 requires that plaintiffs make particularized allegations, it imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6)." *In re Am. Int'l Grp.*, *Inc. Derivative Litig.*, 700 F. Supp. 2d 419, 430 (S.D.N.Y. 2010) (internal quotation marks omitted), *aff'd*, 415 F. App'x. 285 (2d Cir. 2011). The adequacy of a plaintiff's pre-suit demand efforts is determined by the relevant state substantive law, in this case, the law of New York. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 97 (1991).

## I. Standing Under Federal Rule of Civil Procedure 23.1

"The derivative form of action permits an individual shareholder to bring suit to enforce a *corporate* cause of action against officers, directors, and third parties." *Kamen*, 500 U.S. at 95 (internal quotation marks omitted). "Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Id.* (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949)). Because derivative

4

actions inherently interfere with the managerial discretion of corporate boards, New York has "historically been reluctant to permit shareholder derivative suits, noting that the power of courts to direct the management of a corporation's affairs should be exercised with restraint." *Marx v. Akers*, 88 N.Y.2d 189, 194 (1996) (internal quotation marks omitted).

As a general matter, "equity courts established as a precondition for the [derivative] suit that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by *extraordinary* conditions." *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 138 (2d Cir. 2004) (emphasis added) (internal quotation marks omitted). The demand requirement serves to relieve courts from deciding matters of internal corporate governance, provide corporate boards with reasonable protection from harassment, and discourage "strike suits" commenced by shareholders for personal gain. *See Bansbach v. Zinn*, 1 N.Y.3d 1, 8–9 (2003) ("The demand requirement rests on basic principles of corporate control—that the management of the corporation is entrusted to its board of directors, who have primary responsibility for acting in the name of the corporation and who are often in a position to correct alleged abuses without resort to the courts." (quotation marks omitted)). Accordingly, New York courts have emphasized "that pre-suit demand is the rule, that excusing demand is the exception, and that the exception should not be permitted to swallow the rule." *In re Omnicom Grp Inc. Shareholder Derivative Litig.*, 842 N.Y.S.2d 408, 410 (1st Dep't 2007) (citing *Marx*, 88 N.Y.2d at 200).

To plead demand futility under New York law, a complaint must allege with particularity that "(1) a majority of the directors are interested in the transaction, or (2) the directors failed to inform themselves to a degree reasonably necessary about the transaction, or (3) the directors failed to exercise their business judgment in approving the transaction." *Marx*, 88 N.Y.2d at 198. In other words, plaintiffs' allegations must "support their assertion that a majority of the board was so

5

interested or so culpable regarding the complained-of conduct that it would have been futile to demand that the board take legal action to make the company whole." *In re Comverse Tech., Inc.*, 866 N.Y.S.2d 10, 15 (1st Dep't 2008).

The COBA Appellants allege demand futility based on the Executive Board's self-interest and failure to self-inform. Applying the above principles to the matter before us, however, we conclude that the district court did not err in granting the Defendants-Appellees' motion to dismiss for Plaintiffs' failure to comply with Rule 23.1.

## A. Self-Interest

First, the district court correctly rejected the COBA Appellants' assertion that failure to make a demand was justified by the Executive Board members' interest in the challenged transactions. "Under New York law, a director may be interested under either of two scenarios: self-interest in the transaction or loss of independence due to the control of an interested director." *In re Comverse Tech., Inc.*, 866 N.Y.S.2d at 15 (citing *Bansbach*, 1 N.Y.3d at 11). Here, neither theory is availing.

The COBA Appellants first claim that the Executive Board members are "interested" because they "face substantial likelihood of liability" resulting from this lawsuit. A 52. As the court below correctly noted, however, this bare assertion fails as a matter of New York law to establish director interest. "Directors are self-interested in a challenged transaction where they will receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally." *Marx*, 88 N.Y.2d at 202. By contrast, "[t]he bare claim that the directors who served on the stock option and compensation committees should be viewed as interested because they are 'substantially likely to be held liable' for their actions is not enough." *Wandel ex rel. Bed Bath & Beyond, Inc. v. Eisenberg*, 871 N.Y.S.2d 102, 105 (1st Dep't 2009).

6

The COBA Appellants' claim of demand futility due to the alleged control of an interested director (Seabrook) also fails. The COBA Appellants' amended complaint (the "complaint") alleges that Seabrook "ensured the Executive Board's acquiescence [to his schemes] through liberal dispensations of gift cards, cars, and plush job assignments away from Rikers Island, which ensured they exercised no due diligence over Seabrook's activities." A. 31. To state a claim for demand futility, however, the COBA Appellants' complaint must contain more than conclusory allegations that Seabrook "ensured" his dominance of each Board Member. A. 47. The COBA Appellants must instead plead with particularity *how* Seabrook "dominated" each individual board member alleged to be interested. *See Bansbach*, 1 N.Y. 3d at 11 ("Simply naming a majority of the board as defendants with conclusory allegations of wrongdoing or control is insufficient to circumvent the requirement of demand."). Several of the specific facts alleged by the COBA Appellants supposedly to demonstrate Seabrook's "control" appear to constitute the generalized benefits of serving on the COBA Board of Directors. As a matter of New York law, however, merely benefiting generally from one's position on a board after having been selected by its president, does not, on its own, demonstrate that president's "control." *See Zacharius v. Kensington Publ'g Corp.*, 984 N.Y.S.2d 635 2014 WL 52892 (Sup. Ct. 2014) ("New York law requires a description of self-interest or control with greater particularity than simply stating that the board was 'hand-picked.'"). In the absence of any meaningful allegations of director interest pled with specificity, the COBA Appellants have failed to satisfy the futility exception on this basis.

## B. Failure to Self-Inform

Next, "[d]emand is excused because of futility when a complaint alleges with particularity that the board of directors did not fully inform themselves about the challenged transaction to the

extent reasonably appropriate under the circumstances." *Marx*, 88 N.Y.2d at 200. For example, in *Comverse*, New York's Appellate Division found that demand was excused where the plaintiffs had alleged with "particularity" that the board in question failed to exercise reasonably appropriate oversight in a stock option granting process. *In re Comverse Tech., Inc.*, 866 N.Y.S.2d at 16. The plaintiffs' complaint in *Comverse* asserted that "unanimous written consents" for grants of stock options were sometimes presented to the compensation committee for signature more than a month after the grant date and approved "unquestioningly"; compensation committee members often approved option grants orally in direct violation of the company's bylaws; and the committee did not make even a "cursory check" of the list of individuals receiving option grants, which contained dozens of individuals who were not Comverse employees. *Id.* Additionally, the Comverse directors "failed to take action to correct the damage . . . even after the scheme came to light." *Wandel*, 871 N.Y.S.2d at 106.

The "open and egregious" conduct alleged in *Comverse* is quite distinct from the conduct alleged by the COBA Appellants here. *Id.* (labeling the conduct at issue in *Comverse* "open and egregious"). The COBA Appellants' complaint fails to plead with the requisite particularity that the directors had "specific information or reason to inform themselves about the details of" the PPVA investments and failed to do so. *Id.* Although the complaint does list a few investments that the COBA Appellants claim were rubber stamped, "there are no particularized allegations as to what the board members should have considered or investigated to properly inform themselves about the challenged transactions." *Goldstein v. Bass*, 31 N.Y.S.3d 15, 17 (1st Dep't 2016). "Vague allegations that the board was willfully blind do not fill this void." *M+J Savitt, Inc. v. Savitt*, No. 08-cv-8535, 2009 WL 691278, at *7 (S.D.N.Y. Mar. 17, 2009).

## II.     Standing Requirements Under N-PCL

The district court also held that the COBA Appellants failed to state a claim for demand futility on the ground that they have not satisfied the standing requirements in New York's Not-for-Profit Corporation Law ("N-PCL"). N-PCL § 623(a) requires that plaintiffs bringing a derivative action on behalf of a not-for-profit corporation represent "five percent or more of any class of members." The five COBA Appellants here concede that they do not represent five percent of COBA's members, an organization that has "upwards of 18,000 active and retired members." Pls.-Appellants Br. at 22. The COBA Appellants instead seek safe harbor in New York's Labor and Management Improper Practices Act ("LMIPA"), which provides that

> *[a]ny member* of [any] labor organization shall have the right to bring [certain claims as derivative actions] or proceeding[s] if (a) after request by any member that such action or proceeding be brought, such organization shall fail to do so, or (b) such request would be futile. . . .

N.Y. Lab. Law § 725(1) (emphasis added). COBA is a "labor organization" under the LMIPA. This case thus implicates a potential conflict between the LMIPA and the heightened pleading requirements of the N-PCL.

The COBA Appellants acknowledge that New York's Appellate Division has already issued a decision on the question at issue here, holding that a plaintiff seeking to prosecute a derivative action on behalf of an incorporated labor union had to satisfy the N-PCL's "five percent" requirement. *Clark v. Trois*, 801 N.Y.S.2d 330, 331 (2d Dep't 2005). The COBA Appellants, however, argue that *Clark* did not definitively address the potential conflict between the two statutes, and request that we certify this question to the New York Court of Appeals for resolution. When "determinative questions of New York law are involved in a case pending before [us] for which no controlling precedent of the Court of Appeals exists," we *may* certify those questions to

New York's highest court for it to provide a controlling answer. N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a). We decline to do so here, however, because, *inter alia*, the question of New York law is not determinative in this case. Indeed, we need not (and do not) reach it. Even assuming that the COBA Appellants could bring their claims under the LMIPA, they have failed to meet the standard for pleading demand futility. This conclusion is sufficient to resolve this case.

*      *      *

We have considered Plaintiffs-Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk