Billings, Thomas P., J.
For the reasons that follow, Defendants’ Motion to Dismiss Unauthorized Derivative Claim and C. 93A Claim Is ALLOWED IN PART and DENIED IN PART, as specified in the Order below.
ALLEGATIONS OF THE COMPLAINT
According to the Complaint, Royal Administrative Services, Inc. (“RAS, Inc.”) is a Florida corporation, while Royal Administrative Services, LLC (“RAS, LLC”) is a Massachusetts limited liability corporation. The plaintiffs are minority shareholders and members, respectively, in each entity, while defendants Deyesso and McCabe together hold a majority interest (38.25% apiece). Deyesso and McCabe also own several outside business ventures in which the plaintiffs have no interest.
RAS, Inc. “markets, administers, and arranges reinsurance for” extended warranty programs for automobiles (“VSCs”). It receives the up-front premiums collected from the vehicle owner, then remits these less a service fee to the third-party insurer that writes the policy. The insurer then re-insures the risk through Aria (SAC), Inc., a Bermuda segregated account company. When funds are no longer encumbered by the VSC, they are divided among segregated accounts belonging to the six principals, the individual parties to this action. Some of the earnings of RAS, Inc. are attributed to RAS, LLC “to leverage certain tax efficiencies”; RAS, LLC has no income other than this, no employees, and no payroll.
The plaintiffs allege Deyesso and McCabe have employed various means — Including outright transfers to personal and outside business accounts, payment of personal and outside business expenses with RAS, Inc. funds, no-show jobs, low-interest loans, and fee rebates paid by Aria directly to them — to divert assets of RAS, Inc. to their personal use, to family members and friends, and to outside business interests belonging to them, and have funded these activities in part by lowering the minority’s salaries. The majority have also raided Aria segregated accounts belonging personally to the minority plaintiffs, and have engineered low-interest loans from RAS, LLC to themselves and/or their outside business interests.[1] Finally, the majority have withheld information from the plaintiffs to which, as shareholders and members, they were entitled.
The Complaint (at ¶¶52-54) asserts that the plaintiffs have not made demand on RAS, Inc. to prosecute the claims they assert on its behalf because “such a demand would be futile”; the majority shareholders are the wrongdoers and also dominate and control the Board of Directors; they deny all liability; and “such an action would not be prosecuted in good faith.” There are no corresponding allegations as to RAS, LLC, except that the Complaint does allege that the parties’ percentage ownership of the LLC matches their ownership of RAS, Inc. Counsel represented at oral argument that the LLC’s Manager is defendant McCabe, a fact I have confirmed on the Secretary of State’s on-line database.[2]
Count I, for conversion, and Count II, for intentional interference with contractual relations, both pertain to the transfers and “loans” from the minority shareholders’ personal Aria accounts.
Count III, for breach of fiduciary duty, pertains to the salary reductions, transfers of RAS, Inc. funds to the majority’s outside business entities, and withholding of information.
Count IV, for breach of the duties of good faith, loyalty, and care, complain of waste of the assets of RAS, Inc. through the means described above.
Count V, for violation of Chapter 93A, asserts that “Defendants’ conversion, breaches of fiduciary duties, and/or tortious interference as set forth above constitute unfair and deceptive acts or practices in trade or commerce that violated” section 11 of that Chapter.
DISCUSSION
The defendants move for partial dismissal on two grounds: that some of the plaintiffs’ claims need to be asserted derivatively, and they have failed to meet the demand requirement for a derivative action; and that the sort of intra-enterprise wrongdoing alleged here *528 did not qualify as “trade or commerce” under Chapter 93A.
A. Demand and the Derivative Action
1. RAS, Inc.
“(M)atters relating to the internal affairs of a corporation” are governed by the law of the jurisdiction of incorporation. Harrison v. NetCentric Corp., 433 Mass. 465, 470-71 (2001). Compliance with the requirement of pre-suit demand — a venerable accoutrement of derivative actions, here and elsewhere[3] — is such a matter. G.L.c. 156D, §7.47; Kamen v. Kemper Financial Services, Inc., 500 U.S. 90, 108-09 (1991); Johnston v. Box, 453 Mass. 569, 575 (2009).
Florida law therefore governs the demand issue in this case. That state’s Business Corporation Act, at Fla. Stat. §607.07401(2), has the following to say on the subject:
A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made to obtain action by the board of directors and that the demand was refused or ignored by the board of directors for a period of at least 90 days from the first demand unless, prior to the expiration of the 90 days, the person was notified in writing that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period. If the corporation commences an investigation of the charges made in the demand or complaint, the court may stay any proceeding until the investigation is completed.
This provision, which was inserted by statutory revisions in 1990 and 2003,[4] appears to have been derived from the American Bar Association’s Model Business Corporation Act, but truncated somewhat: where the Model Act expresses itself both directly as to the substantive requirement[5] and (in section 7.44) in terms of pleading requirements, Florida’s adaptation does not expressly require that demand be made; only it be pleaded with particularity in a verified complaint.[6]
The ABA’s Model Act, the American Law Institute’s Principles of Corporate Governance (sec. 7.03) that preceded it, and the various states’ adoptions and/or adaptations of them are widely viewed as imposing a “universal demand” requirement; that is, as abrogating the former rule that demand may be excused if the plaintiff pleads facts demonstrating that it would be futile, and requiring instead that the plaintiff make and plead demand in any derivative case. See, e.g., Kamen at 94; Halebian v. Berv, 457 Mass. 620, 625 (2010); Johnston, 453 Mass. at 578 n. 15.
Those reported cases which have surveyed the field have likewise placed Florida’s statute, since the 1990 revision, in the universal demand column.[7] At least one federal court, when faced with a derivative action involving a Florida business corporation, has ruled that section 607.07401(2) no longer makes room for the demand excused case, while noting the absence of Florida appellate precedent on the question. D’Addario v. Geller, 2005 WL 1667913 (E.D.Va. 2005) at *6-*7 (so ruling, but finding the demand requirement waived). These cases have the both statutory language and simple logic on their side: a requirement that the plaintiff allege, under oath and with particularity, that demand was made is, in purpose and effect, a requirement that demand be made.
Two Florida federal cases, however, have come out the other way. In McDonough v. Americon Int’l Corp., 151 F.R.D. 140 (M.D.Fla. 1993), the court cited Kamen for the proposition that the law of the state of incorporation governs the demand issue; apparently overlooked (at least, did not mention) footnote 7 (listing Florida as a universal demand state); and cited a single, pre-1990 Florida case for the proposition that demand is excused “where the demand obviously would be unavailing.” 151 F.R.D. at 142, quoting Comlee Constr. Co. v. Cay Constr. Co., 221 So.2d 792, 796 (Fla.App.4th Dist. 1969). The McDonough decision did not cite, or otherwise indicate awareness of, Fla. Stat. §607.07401(2).
In In re Mercedes Homes, Inc., 431 B.R. 869 (Bktcy.S.D.Fla. 2009), a bankruptcy judge similarly cited an old case (Belcher v. Schilling, 309 So.2d 32, 35 (Fla.App.3d Dist. 1975)) for the proposition that “(u)nder Florida law, the sole exception to th[e] demand requirement is where such a demand ‘would be impractical, unreasonable or useless . ..’ ”). Here, too, the statement (dicta, this time; the plaintiff had not alleged futility) was made without any citation to the relevant statute.
Neither McDonough nor Mercedes Homes is binding precedent, and neither is persuasive. I agree with those courts that have examined the issue in light of the statute that Florida is a universal demand jurisdiction; i.e., that there is no futility exception. Demand not having been made in this case, therefore, so much of the Complaint as asserts derivative claims must be dismissed, without prejudice to reassertion should demand be made.
2. RAS, LLC
RAS, LLC, however, is (as noted above) a Massachusetts limited liability company, not a Florida business corporation. By virtue of G.L.c. 156D, §7.42 Massachusetts, like Florida, is a universal demand state, but only as respects business corporations.[8] Chapter 156D does not govern limited liability companies, as to which the common-law futility exception is alive and well. Billings v. GTFM, LLC, 449 Mass. 281, 289-90 & n.19 (2007).
As in Billings, the complaint in this case adequately alleged that the defendants have “an interest in the outcome of the suit that is adverse to the interest of the limited liability company” such that their voting interests should be excluded under G.L.c. 156C, *529 §56(a), that the remaining voting interests — the plaintiffs — "impliedly [authorized the lawsuit] by filing the complaint," Billings at 289 n.18, and that demand would be futile.[9] There is therefore no occasion to dismiss claims asserted on behalf of RAS, LLC.
B. Chapter 93A and Intra-Enterprise Claims.
“[T]he heavy artillery of c. 93A” (Cassano v. Gogos, 20 Mass.App.Ct. 348, 351 (1985)) may be deployed only against “unfair or deceptive acts or practices in the conduct of any trade or commerce.” G.L.c. 93A, §2 (emphasis supplied). Cases interpreting this language in light of the statute’s legislative history have held “that the unfair or deceptive acts or practices prohibited are those that may arise in dealings between discrete, independent business entities, and not those that may occur within a single company.” Manning v. Zuckerman, 388 Mass. 8, 12 (1983). “[T]he distinguishing mark for G.L.c. 93A applicability,” therefore, is “interactive business transactions but with independent business entities.” Grand Pacific Finance Corp. v. Brauer, 57 Mass.App.Ct. 407, 416 n.7 (2003).
In this case, the defendants are accused of pillaging corporate assets, LLC assets, and assets of their fellow shareholders and members to benefit themselves, their outside business interests, and others near and dear to them. That entities and individuals unaffiliated with RAS, Inc. and RAS, LLC were (in part) the beneficiaries of the defendants’ allegedly unlawful largesse, however, is not the issue: the dealings among the defendants, the plaintiffs, and the entities were all within the setting of their common, closely held business enterprise. “[I]f [the defendants] committed any unfair or deceptive acts, they necessarily occurred in the context of the parties’ [shareholder] relationship ... or arose out of that relationship . . . and not in an arm’s-length commercial transaction between distinct business entities.” Puritan Medical Ctr., Inc. v. Cashman, 413 Mass. 167, 180 (1992), quoting and adapting from Manning v. Zuckerman, 388 Mass. 8, 11 (1983). Count v. therefore fails to state a claim.
ORDER
For the foregoing reasons, Defendants’ Motion to Dismiss Unauthorized Derivative Claim and C. 93A Claim Is ALLOWED IN PART and DENIED IN PART, as follows.
1. The claims of Counts III, ¶68 subparts (a) and (b) but not subpart (c), and Count IV are dismissed, without prejudice, to the extent that such claims are asserted on behalf of RAS, Inc., but not to the extent (if any) that they are asserted on behalf of RAS, LLC.
2. Count v. is dismissed with prejudice.

 This is a summary only. The allegations of the Complaint are a good deal more specific, and meet the pleading requirements of Iannacchino v. Ford Motor Co., 451 Mass. 623, 635-36 (2008).

 See Schaer v. Brandeis University, 432 Mass. 474, 477 (2000) (“matters of public record . . . may be taken into account” on a Rule 12(b)(6) motion to dismiss) (citation omitted).

 See, e.g., Dunphy v. Travelers’ Newspaper Ass’n, 146 Mass. 495, 496-97 (1888), citing Hawes v. Oakland, 104 U.S. 450 (1881); Brewer v. Boston Theatre, 104 Mass. 378, 387-88 (1870).

 The 1990 revision required that the plaintiff “allege with particularity the demand made to obtain action by the board of directors and that the demand was refused or ignored. "The 2003 revision added the 90-day waiting period and the exception to it in cases of impending and irreparable injury to the corporation.

 §7.42 Demand
No shareholder may commence a derivative proceeding until:
(1) a written demand has been made upon the corporation to take suitable action; and
(2) 90 days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90 day period.

 Massachusetts, by contrast, has followed the Model Act in expressly treating the demand requirement as one both of substance and of pleading. See G.L.c. 156D, §§7.42-7.44.

 E.g., Kamen at 102 n.7 (“Only a few states . . . have adopted a universal-demand rule,” citing Florida, Georgia and Michigan statutes); Boland v. Engle, 113 F.3d 706, 712 (7th Cir. 1997) (“Eleven states have statutorily imposed a universal demand requirement,” citing Florida statute and ten others); In re Ferro Corporate Derivative Litigation, 2006 WL 2038659 (N.D. Ohio March 21, 2006) at *8, aff'd, 511 F.3d 611 (6th Cir. 2008) (“Florida has . . . adopted a universal demand requirement, which abolished the demand futility exception altogether”); Ritter v. Dollens, 2004 WL 1771597 at *1 & n.3 (S.D.Ind. July 13, 2004) (Florida one of nineteen states with universal demand statutes); In re Guidant Shareholders Derivative Litigation, 841 N.E.2d 571, 574 (Ind. 2006) (listing Florida as a participant in “the national trend towards the universal demand rule”), Werbowski v. Collumb, 766 A.2d 123, 141 (Md. 2001) (one of eighteen states); Marx v. Akers, 88 N.Y.2d 189, 197, 666 N.E.2d 1034, 644 N.Y.S.2d 121 (1996).

 And also, by common-law extension, as respects business or “Massachusetts” trusts. See Halebian v. Berv, 457 Mass. 620, 623 n.4 (2010).

 That the Complaint uses the word “futile” only with respect to RAS, Inc. is not fatal; the facts amounting to a conflict of interest on the part of the majority (Deyesso and McCabe) and the manager (McCabe) are adequately pled. The “demand excused” cases have not required more than this. E.g., Harhen v. Brown, 431 Mass. 838, 844 (2000) (pre-Chapter 156D case; “In general, before filing a derivative action on behalf of a corporation, a plaintiff ‘must establish that... all available means to obtain relief through the corporation itself are exhausted by making demand on the corporation’s board of directors to prosecute the litigation . . . However, if a majority of directors are alleged to have participated in wrongdoing, or are otherwise interested, a plaintiff may seek to have the demand on the board excused as futile. This is referred to as a ‘demand excused’ case”) (citations omitted).
The advent of special litigation committees and other methods by which an interested Board may address shareholder demands in a disinterested manner may well be one impetus behind statutorily adopted universal demand requirements. I know, however, of no Massachusetts case imposing such a requirement as a matter of common law. Mass.R.Civ.P. 23.1 (second sentence), moreover, is to the contrary.