# Third District Court of Appeal

## State of Florida

Opinion filed May 26, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D19-886; 3D20-502
Lower Tribunal No. 17-19695
_____


**Jon J. Rappaport, et al.,**
Appellants/Cross-Appellees,

vs.

**Arthur F. Scherr, etc.,**
Appellee/Cross-Appellant.


Consolidated Appeals from the Circuit Court for Miami-Dade County, William Thomas, Judge.

SMGQ Law, and Deborah Baker and Rachel E. Walker, for appellants/cross-appellees.

Damian & Valori, LLP, and Peter F. Valori and Adam Schultz, for appellee/cross-appellant.


Before EMAS, C.J., and LINDSEY and HENDON, JJ.

EMAS, C.J.

## INTRODUCTION

In these consolidated appeals, Dr. Jon Rappaport ("Dr. Rappaport") and Pet Medical Centers, LLC ("PMC"), defendants below, appeal final judgment entered in favor of plaintiff below, Dr. Arthur Scherr ("Dr. Scherr"), and a subsequent judgment awarding attorney's fees to Dr. Scherr. Dr. Scherr cross-appeals the final judgment entered in his favor, asserting the damages award was inadequate. Appellants raise a number of claims on appeal. We find one of them dispositive and, for the reasons that follow, we reverse both judgments and remand for entry of an order of dismissal and for further proceedings consistent with this opinion.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

Dr. Rappaport is a veterinarian who founded several animal hospitals in South Florida, including South Dade Animal Hospital ("SDAH"), Aventura Animal Hospital ("Aventura"), and Brickell Animal Hospital ("BAH"). He also owned and operated PMC, a company he formed to manage all of the various animal hospitals he owned. In 2013, Dr. Scherr became a minority shareholder of SDAH.

In 2015, Dr. Rappaport negotiated with VCA, Inc., a national veterinary conglomerate, to purchase all eight of his animal hospitals for $32 million. Dr. Scherr was informed that as part of this global transaction, SDAH

was selling its assets and goodwill for $1.75 million, and that Dr. Scherr's pro rata portion would be $542,500.

In 2017, Drs. Scherr, Navratik and Wilber,[1] derivatively on behalf of their respective hospitals, filed suit against Dr. Rappaport and PMC, alleging Dr. Rappaport had breached his fiduciary duty and engaged in mismanagement and self-dealing by, inter alia, using hospital funds to meet his own personal obligations, unfairly paying management fees to himself and PMC, and otherwise engaging in inequitable conduct, including concealing the fact that VCA was paying a total of $32 million to purchase all of the hospitals.

The operative second amended complaint alleged the following claims:

Count I – breach of fiduciary duty against Dr. Rappaport

Count II – breach of fiduciary duty against PMC

Count III – corporate waste against Dr. Rappaport

Count IV – unjust enrichment against Dr. Rappaport and PMC

Count V – aiding and abetting against PMC

Count VI – conspiracy against Dr. Rappaport and PMC

---

[1] Similar to Dr. Scherr, Drs. Navratik and Wilber were shareholders of animal hospitals owned by Dr. Rappaport which were part of the global sale to VCA. However, during the course of the proceedings, Drs. Navratik and Wilber settled their claims and they are not a part of this appeal.

Count VII – fraudulent misrepresentation against Dr. Rappaport

Count VIII – fraudulent concealment against Dr. Rappaport

Count IX – reformation

Count X – equitable accounting

Count XI – declaratory judgment

Dr. Rappaport and PMC filed motions to dismiss, for judgment on the pleadings, and for summary judgment, each arguing, inter alia, that the plaintiffs failed to comply with the requirements set forth in section 607.07401(2), Florida Statutes. The trial court denied the motions seeking dismissal on this basis.

The case eventually proceeded to a week-long bench trial, culminating in a fifteen-page order setting forth the trial court's findings of fact and conclusions of law. The court found that Dr. Rappaport intentionally concealed material information about the $32 million purchase price from Dr. Scherr and falsely reported that the $1.75 million valuation of SDAH was the best offer made by VCA. In short, the court found, Dr. Rappaport intentionally concealed information from his partners, and negotiated against them in order to maximize the benefits to himself. Accordingly, the court found that the allegations of counts I (breach of fiduciary duty by Dr. Rappaport); III (corporate waste by Dr. Rappaport); IV (unjust enrichment by

4

Dr. Rappaport and PMC); VII (fraudulent misrepresentation by Dr. Rappaport); and VIII (fraudulent concealment by Dr. Rappaport) were proven by the greater weight of the evidence.

The court found that Dr. Scherr failed to prove the allegations of the remaining counts. The court determined that a fair allocation of the VCA proceeds (as adjusted for Dr. Rappaport's misconduct prior to closing) would have resulted in SDAH receiving $337,500 more than the amount it was paid. Thereafter, the court entered final judgment in favor of Dr. Scherr in the amount of $337,500 plus interest, to be paid jointly and severally by Dr. Rappaport and PMC.[2] The court entered a subsequent judgment in favor of Dr. Scherr for attorney's fees and costs.

## DISCUSSION AND ANALYSIS

Together, appellants and cross-appellant have raised thirteen issues on appeal. Following our review, we conclude that the trial court erred in failing to dismiss the claims against Dr. Rappaport and PMC because Dr. Scherr failed to provide the requisite pre-suit demand upon SDAH pursuant to section 607.07401(2), Florida Statutes (2017).

---

[2] Of significance, because Dr. Scherr's claims had all been brought derivatively on behalf of SDAH, final judgment was entered in favor of Dr. Scherr "derivatively as a shareholder of and on behalf of" SDAH.

In 2017, when Dr. Scherr filed the lawsuit against Dr. Rappaport, the Florida Business Corporation Act, specifically section 607.07401(2), provided:

> (2) A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made to obtain action by the board of directors and that the demand was refused or ignored by the board of directors for a period of at least 90 days from the first demand unless, prior to the expiration of the 90 days, the person was notified in writing that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period. If the corporation commences an investigation of the charges made in the demand or complaint, the court may stay any proceeding until the investigation is completed.

It is undisputed that Dr. Scherr failed to make a demand upon SDAH prior to filing the lawsuit.[3] Thus, the complaint did not "allege with particularity the demand made to obtain action by the board of directors," nor did it allege that "the demand was refused or ignored by the board of directors for a period of at least 90 days."

We review de novo the trial court's denial of the motion to dismiss on this basis. See Fox v. Prof'l Wrecker Operators of Fla., Inc., 801 So. 2d 175 (Fla. 5th DCA 2001) (noting that, where trial court order on a motion to

---

[3] Dr. Scherr did file a post-suit demand on July 27, 2018.

6

dismiss resolves an issue of law, it is reviewed on appeal under the de novo standard.)

As this court recognized in <u>James Talcott, Inc. v. McDowell</u>, 148 So. 2d 36, 37 (Fla. 3d DCA 1962):

> As a general rule, an action to enforce corporate rights or to redress injuries to the corporation cannot be maintained by a stockholder in his own name or in the name of the corporation, but must be brought by, and in the name of the corporation itself. However, under certain circumstances a stockholder may bring a stockholders' derivative action, which is an action in which a stockholder seeks to sustain in his own name a right of action existing in the corporation. The corporation is the real party in interest, the stockholder being only a nominal plaintiff. *Such an action may be brought where the corporation has wrongfully refused to bring suit* as the result of fraud, bad faith, or gross abuse of discretion on the part of the board of directors.

(Emphasis added and internal citations omitted).

Thus, before filing a derivative action, the shareholder must first make a presuit demand upon the corporation, giving the corporation itself an opportunity to act or to refuse to act. As this court observed in <u>Dutch v. Gordon</u>, 481 So. 2d 1235, 1235 (Fla. 3d DCA 1985): "It has been established law in this state that before a stockholder or shareholder derivative action can be maintained it is necessary for the complainant to serve a demand on the corporation and its proper officers requesting action on behalf of the corporation." This concept derives from "a fundamental principle of corporate governance that the directors of a corporation and not its

7

shareholders manage the business and affairs of the corporation." Fletcher Cyclopedia of the Law of Corporations, § 5963 (Sept. 2020). Thus, it is for the directors to decide whether or not to litigate on behalf of the corporation and, "in the usual case, a shareholder seeking to assert a claim on behalf of the corporation must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired." Id.

As such, we find without merit Dr. Scherr's position that his post-suit demand somehow met the statutory requirements of section 607.07401(2).[4] The law requires the demand be served prior to the lawsuit. Allowing a post-suit demand to satisfy this requirement would defeat the underlying purpose, which "is to protect the directors' prerogative to take over the litigation or to oppose it." Kamen v. Kemper Fin. Svcs., Inc., 500 U.S. 90, 101 (1991).

---

[4] We disagree with, and distinguish the holding of the case cited by Dr. Scherr in support of this position, McKane Family Ltd. P'ship v. Sacajawea Family Ltd. P'ship, 211 So. 3d 117 (Fla. 4th DCA 2017). First, McKane Family did not concern the Florida Business Corporation Act, but rather, the law related to Limited Liability Companies. Second, that case relies upon precedent that concerned pre-suit demand requirements for medical malpractice litigation and cited to a case from California (applying Florida law) which held that dismissal was proper but that the court could allow a new lawsuit to be filed if the pre-suit demand requirements were met following dismissal. Here, the trial court denied dismissal and allowed the lawsuit to proceed to trial, despite the failure to comply with the pre-suit demand requirement.

8

We also reject Dr. Scherr's contention that his failure to comply with the statutory pre-suit demand requirement did not require dismissal because it would have been futile for him to provide the demand, given Dr. Rappaport's control over the corporation and the absence of any likelihood that he would authorize a lawsuit against himself.

Although it is true that "in some jurisdictions, demand on directors . . . to pursue litigation on a corporate cause of action . . . is not a precondition to a derivative proceeding if the plaintiff can establish the futility of the demand, . . . **[o]ther jurisdictions . . . have rejected a futility exception to the demand requirement on the ground that the applicable statute is unambiguous in requiring demand in all cases**." Fletcher Cyclopedia of the Law of Corporations, §5965 (Sept. 2020) (emphasis added).

Indeed, a prior version of Florida's corporate shareholder derivative action statute did contain a futility exception: section 608.131, Florida Statutes (1975), entitled "Stockholders' derivative actions; security for expenses" provided in pertinent part:

> The complaint must set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board of directors of such corporation or the reasons for not having made such effort.

However, this subsection and its futility exception was repealed, effective January 1, 1976. See ch. 75-250, § 139, Laws of Fla.[5]

Having repealed section 608.131, which contained an express futility exception, and later replacing it with section 607.07401, which contained no such exception, Florida became a "universal-demand" jurisdiction, with a statute requiring presuit demand in all cases, allowing for no futility exception. See, e.g., Kamen, 500 U.S. at 102 n. 7 (describing Florida as imposing a "universal-demand" requirement under § 607.07401(2)); Weir v. Stagg, No. 09-21745-CIV, 2011 WL 13174531 at *11 (S.D. Fla. 2011) (construing section 607.07401(2) and noting that "Florida law does not recognize a futility exception to the presuit demand requirement"); Garcia v. Deyesso, 30 Mass. L. Rptr. 527 at *3 (Mass. Super. Ct. 2012) (construing section 607.07401(2) as "abrogating the former rule that demand may be excused if the plaintiff pleads facts demonstrating that it would be futile, and

_____

[5] Dr. Scherr cites to Belcher v. Schilling, 309 So. 2d 32, 35 (Fla. 3d DCA 1975), for his proposition that he was entitled to rely upon a futility exception to the presuit demand requirement. This reliance is misplaced, however, as our decision in Belcher was premised upon application of the then-existing statutory language of section 608.131(2), which contained an express futility exception to the presuit demand requirement. As discussed *supra*, that statute and its futility exception were repealed in 1975, and the version of the statute applicable to the instant case (section 607.07401(2)), contains no such exception.

10

requiring instead that the plaintiff make and plead demand in *any* derivative case"). See also D'Addario v. Geller, No. 2:02CV250, 2005 WL 1667913 (E.D. Va. 2005) (construing section 607.07401(2) and concluding, based upon the plain language of the statute, that no futility exception exists); Allen ex rel. Allen & Brock Const. Co. v. Ferrera, 540 S.E. 2d 761 (N.C. App. 2000) (observing that, although North Carolina case law previously recognized a futility exception to the presuit demand requirement, the enactment of a statute expressly requiring presuit demand in a shareholder derivative action, but without providing a futility exception, abolished the futility exception under North Carolina law).

The statutory language in effect at the time Dr. Scherr filed suit unambiguously mandated he allege with particularity 1) "the demand made to obtain action by the board of directors;" and 2) "that the demand was refused or ignored by the board of directors for a period of at least 90 days from the first demand." The statute provided no exception for a shareholder to avoid this requirement by alleging that compliance with the required presuit demand or the ninety-day waiting period would be futile.[6]

---

[6] Interestingly, the only exception provided in this version of the statute is one that permits a shareholder to allege that "irreparable injury to the corporation would result by waiting for the expiration of the 90-day period." § 607.07401(2) (2017).

11

In addition to the plain language of section 607.07401(2), and the language of the predecessor statute, our analysis is further supported by the fact that, in 2019, the Florida Legislature again amended the statute, (now renumbered as section 607.0742). That amended law, which became effective January 1, 2020, reinserted the futility exception contained in an earlier version, and permits the shareholder to allege in the complaint, with particularity: "The reason or reasons the shareholder did not make the effort to obtain the desired action from the board of directors or comparable authority." § 607.0742(2)(c), Fla. Stat. (2020).[7]

Accordingly, because Dr. Scherr failed to comply with the pre-suit demand requirement, we must reverse and remand with instructions for the trial court to dismiss the Second Amended Complaint.[8] This necessarily

---

[7] Legislative Staff Analysis indicates this provision was enacted "to conform the provisions of that section to those of the Model [Business Corporations] Act" and to "[a]llow a shareholder to initiate a derivative action without waiting 90 days for the corporation to respond to his or [her] demand, if the shareholder is able to prove that such a demand is futile." Fla. S. Jud. Comm., CS/HB 1009 (2019) Staff Analysis at 9 (June 10, 2019).

[8] Because we reverse the final judgment on this basis, there is no need to reach the other issues raised in the main appeal and cross appeal.

compels a reversal of the final judgment awarding attorney's fees to Dr. Scherr under section 607.07401(6), Fla. Stat. (2019)[9] as well.

## CONCLUSION

Dr. Scherr's failure to provide the requisite statutory pre-suit demand prior to filing this derivative action against Dr. Rappaport and PMC required the trial court to dismiss the complaint and the trial court's error in denying the motion to dismiss on this basis compels reversal and remand for the court to dismiss the Second Amended Complaint. In addition, because we reverse the final judgment in favor of Dr. Scherr, we also reverse the final judgment awarding attorney's fees in his favor.

Reversed and remanded.

---

[9] Section 607.07401(6) provides for an award of reasonable expenses, including attorney's fees, to a successful plaintiff in a shareholder derivative action.

13